Opinion filed March 22,
2012

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00295-CR 

                                                    __________

 

                       RODNEY
LAUDELL MASON, JR., Appellant

                                                             V.

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 118th District Court

                                                         Glasscock
County, Texas

                                                        Trial
Court Cause No. 421



 

                                            M E M O R A N
D U M   O P I N I O N

 

            The
jury convicted Rodney Laudell Mason, Jr. of the offense of murder and assessed his
punishment at confinement for life.  We affirm.  

Issues

            Appellant
presents three issues for review.  In the first issue, he contends that the
evidence is insufficient as a matter of law to rebut his claim of
self-defense.  Appellant argues in his second and third issues that the trial
court erred in excluding testimony regarding specific violent acts of
misconduct committed by the victim and regarding the victim’s noncompliance
with prescribed medications.  

Background

            The
record shows that emergency personnel were dispatched around 9:30 p.m. on March 15,
2008, after receiving a report that a body was lying on Highway 137.  When
authorities arrived, the victim, Timothy Wayne Sanchez, was dead.  He had
suffered multiple cut and stab wounds and died as a result of “thrust”-type
stab wounds to the left neck, the left flank (severing the bottom of the
kidney), and the right neck.  The autopsy revealed forty-two wounds of varying
degrees of severity to the victim’s head, face, neck, arms, hands, and torso, including
defensive wounds to his hands.  There were drag marks from the highway to a
fence indicating to Sheriff Keith Burnett that the victim had been dragged from
the highway to the fence (approximately seventy feet away) but had somehow made
his way back to the highway.  The victim’s shirt was soaked with blood, and he
had dirt on the majority of his body.  There was blood on the highway, on the
shoulder of the highway (including separate pools of blood), in the grass, and on
a pole. 

            Appellant
was eventually apprehended in New Mexico and arrested for the offense.  Appellant
admitted killing the victim, but appellant claimed that he acted in
self-defense.  Appellant’s statement was recorded on a DVD that was played for
the jury and admitted into evidence as State’s Exhibit No. 25.  In his
statement, appellant said that he met the victim at a convenience store in
Odessa.  According to appellant, the victim said that he was a member of the
Mexican Mafia; that he had a gun, “a .38”; and that he could get appellant two
ounces of cocaine for only $1,000 from “his people” in San Angelo.  Appellant
indicated that that was a really good price, and he agreed to the purchase.  Appellant
and the victim were on the way to San Angelo in appellant’s car when the victim
offered appellant a line of cocaine.  Appellant said that he had slowed down
and had begun snorting the cocaine when the victim suddenly attacked appellant
with a metal pipe or bar; the victim hit appellant on the forehead and the top
of the head with the metal bar.  Appellant used his hands to demonstrate the
approximate length and diameter of the metal bar.  In order to defend himself,
appellant first tried to push the victim away and then grabbed his pocket knife
and began stabbing the victim.  Appellant pulled over, and the struggle
continued outside the car.  Appellant first said that he followed the victim
out of the car, but he later said that the victim dragged appellant out of the
car.  After the struggle, appellant dragged the victim’s body over to the
fence.  Fearing that the victim’s “buddies” would be there soon, appellant left
the scene and drove back to Odessa.  During his interview, appellant displayed
a scar on his pinkie finger from a cut received during the struggle with the
victim.

DNA
testing of samples taken from appellant’s car revealed that the victim’s DNA
was present in bloodstains located inside the car on the passenger’s side. 
Though bloodstains were not apparent to the naked eye because they had been
cleaned, numerous bloodstains became apparent at various places inside the car
when sprayed with a chemical that reacts with iron in blood.  Most of the blood
at the scene came from the victim; however, several drops of appellant’s blood
were located on the highway.  Appellant’s blood was also found on the victim’s
jeans.

Julius
Kal Smith, a friend of appellant that had been in a relationship with
appellant’s sister since 1990, testified that he saw appellant later that night
in Odessa and that appellant had a bump on his head that was still bleeding a
little.  Smith saw appellant’s car the next day; he could tell there had been a
struggle in the car.  Smith cleaned the blood out of appellant’s car, cut out a
bloodstained seatbelt, threw the seatbelt away, and also threw away a metal bar
that he found in the car.  Smith described the metal bar as being twelve to
sixteen inches long and wrapped in black tape.

Two
peace officers testified that they also saw appellant on the night of, but
after, the victim’s death.  Appellant was with Smith in Odessa when Smith’s car
ran out of gas.  Trooper Kerry Alan Vore observed the stalled vehicle and stopped
to see if the motorist needed assistance.  When the occupants of the vehicle
jumped out, Trooper Vore asked Officer Scott McKown to come assist him.  Smith was
arrested after he gave false identifying information. The officers did not
observe any wounds on appellant’s head at that time, nor did they think appellant
was acting strangely.

To
support his claim of self-defense, appellant presented evidence about the victim. 
Appellant presented the testimony of Aldo Carrasco Alvarado, who knew the
victim “[f]or about three days.”  Alvarado testified that he had seen the
victim carrying a black metal bar or pipe approximately fourteen to sixteen
inches long.  Alvarado also testified that the victim had threatened to kill
him.  Alvarado described the victim as being bossy, aggressive, and angry.

Appellant
presented the testimony of Dr. Jarvis Wright, a psychologist who had reviewed
the victim’s mental health records spanning from when he was in first grade to
about one year prior to his death.  The victim had been diagnosed with bipolar
disorder, post-traumatic stress disorder, and conduct disorder.  Dr. Wright
explained these disorders and some of the characteristics associated with them,
including acting violently.

            The
State presented rebuttal witnesses indicating that the victim was not a violent
person. The State also presented evidence showing that the victim was leaving
his girlfriend and moving back to San Angelo where his family lived.  A
coworker testified that, on the day of his death, the victim had asked the
coworker for a ride to San Angelo and offered to pay for the gas.  Other
evidence showed that the victim had been paid on Friday (the day before his
death), that he had about $700 on him on the day he was killed, and that he
always carried a wallet containing his cash and Texas identification card.  Authorities
testified that they looked for the victim’s wallet at the scene but that they
did not find any wallet.

            Furthermore,
the victim in this case was eighteen years old and was described as being “a
very small kid,” approximately 120 pounds and 5'4" or 5'5" tall.  Appellant
was twenty-nine years old and was described as being approximately 5'10"
or 5'11" tall and weighing 190 to 200 pounds.  The toxicology tests
performed in conjunction with the autopsy indicated that the victim had no drugs
or alcohol in his system.

Self-Defense

A
person is justified in using force against another when the actor reasonably
believes that the force is immediately necessary to protect the actor against
the other’s use or attempted use of unlawful force.  Tex. Penal Code Ann. § 9.31 (West 2011).  Deadly force may be
justified as follows:  

(a) A person is justified
in using deadly force against another:

(1) if the actor would
be justified in using force against the other under Section 9.31; and

(2) when and to the
degree the actor reasonably believes the deadly force is immediately necessary:

(A) to protect the actor
against the other’s use or attempted use of unlawful deadly force; or

(B) to prevent the other’s
imminent commission of aggravated kidnapping, murder, sexual assault,
aggravated sexual assault, robbery, or aggravated robbery.

(b) The actor’s belief
under Subsection (a)(2) that the deadly force was immediately necessary as
described by that subdivision is presumed to be reasonable if the actor:   

            (1) knew or had reason to
believe that the person against whom the deadly force was used:

            (A) unlawfully and with force
entered, or was attempting to enter unlawfully and with force, the actor’s
occupied habitation, vehicle, or place of business or employment;

            (B) unlawfully and with force
removed, or was attempting to remove unlawfully and with force, the actor from
the actor’s habitation, vehicle, or place of business or employment; or

            (C) was committing or
attempting to commit an offense described by Subsection (a)(2)(B);

            (2) did not provoke the
person against whom the force was used; and

            (3) was not otherwise engaged
in criminal activity, other than a Class C misdemeanor that is a violation of a
law or ordinance regulating traffic at the time the force was used.

Id. § 9.32. 


            The
defendant has the initial burden to produce some evidence to support a
self-defense claim.  The State then has the burden of persuasion to disprove the
defense beyond a reasonable doubt.  Alonzo v. State, 353 S.W.3d 778, 781
(Tex. Crim. App. 2011); Zuliani v. State, 97 S.W.3d 589, 594–95 (Tex. Crim.
App. 2003).  The burden of persuasion is not one that requires the production
of evidence but requires only that the State prove its case beyond a reasonable
doubt.  Saxton v. State, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991).  

Under
the facts of this case, we cannot overturn the jury’s rejection of appellant’s
self-defense claim.  The jury, as the trier of fact, was the sole judge of the
credibility of the witnesses and of the weight to be given to their testimony. 
Tex. Code Crim. Proc. Ann. art.
36.13 (West 2007), art. 38.04 (West 1979).  As such, the jury was free to
believe or disbelieve all or any part of any witness’s testimony.  Sharp v.
State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  The jury apparently
rejected appellant’s claim of self-defense, which it was free to do in this
case.  The jury could have reasonably concluded that appellant’s conduct in
stabbing the victim forty-two times (the victim’s wounds included defensive
wounds and stab wounds on the back of his body), in continuing the assault
outside the vehicle, in dragging the victim’s body away from the highway, and
in fleeing was inconsistent with his defensive claim.  See Smith v. State,
355 S.W.3d 138, 144–47 (Tex. App.—Houston [1st Dist.] 2011, pet. ref’d).  Appellant’s
first issue is overruled.  

Excluded
Evidence

            In
his second and third issues, appellant complains of the trial court’s exclusion
of evidence regarding prior violent acts committed by the victim and the
victim’s prescription medications.  A trial court’s ruling admitting or excluding
evidence is reviewed on appeal for abuse of discretion.  Ramos v. State,
245 S.W.3d 410, 418 (Tex. Crim. App. 2008).  The ruling will be upheld on
appeal if it is reasonably supported by the record and is correct under any
theory of law applicable to the case.  Id.  

            With
respect to his second issue, appellant offered the testimony of Dr. Wright
regarding acts of violence that had been committed by the victim.  However, Dr.
Wright’s knowledge of any acts committed by the victim came entirely from his
review of the victim’s medical records, which were not offered into evidence at
trial and are not part of the record on appeal.  Dr. Wright had never met the
victim and had no personal knowledge of any acts committed by the victim.  The
victim’s medical records apparently indicated that the victim had attacked his doctors
and other people.  The trial court ruled that appellant could introduce
evidence of the victim’s prior acts to show that the victim was the aggressor
but that the mental health records could not be used for that purpose and that
Dr. Wright could not testify “about the records indicating multiple acts of
violence.”

While
we agree with appellant’s statements that (1) pursuant to Tex. R. Evid. 703, Dr. Wright
could rely on the victim’s records as a basis for his expert opinion and (2) specific
acts of violent conduct committed by a victim may be admissible under Tex. R. Evid. 404 and 405 to show that
the victim was the aggressor and that the defendant acted in self-defense, we
do not agree that the trial court abused its discretion in excluding Dr. Wright’s
proffered testimony about the victim’s prior acts of violence in this case. 
First, Dr. Wright was not an appropriate witness to testify about the prior
acts of violence.  Dr. Wright’s proffered testimony was hearsay for which no
exception was offered by appellant.[1] 
See Tex. R. Evid. 801–804.
 Second, specific acts of a victim’s violent conduct “are admissible only to
the extent that they are relevant for a purpose other than character conformity.” 
Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).  Specific
violent acts have been held to be relevant apart from showing character
conformity in the context of proving that the deceased was the first aggressor
by demonstrating the deceased’s intent, motive, or state of mind.  Id.  In
this case, the record does not show that Dr. Wright’s proffered testimony that
the victim had “attacked” his doctors and others would have been relevant for a
purpose other than character conformity.  See id. at 760–62; Smith,
355 S.W.3d at 150–51; James v. State, 335 S.W.3d 719, 728 (Tex.
App.—Fort Worth 2011, no pet.).  Appellant’s second issue is overruled.  

            In
his final issue, appellant complains that the trial court prohibited Dr. Wright
from testifying what the effects would have been on the victim if the victim
had failed to take his prescription medications.  Defense counsel informed the
trial court that Dr. Wright would testify that a patient who had the disorders
that the victim had; who had been prescribed the three specific,
mood-stabilizing medications that the victim had been prescribed; but who did
not take the medications “would tend to become unstable and violent.”  The
trial court ruled that Dr. Wright could not testify “about anything involving
medication.”  

The
record shows that Dr. Wright, a psychologist, was not authorized to prescribe
medication.  The prescribing doctor was not called as a witness, and it was not
even clear from the proffer of evidence when the medications had been
prescribed or whether the victim should still have been taking them around the
time of his death.  The most recent mental health record reviewed by Dr.
Wright, which may or may not have contained information regarding the victim’s
prescriptions, was dated February 2007—more than a year prior to the date of
this offense.  Under these circumstances, we cannot hold that the trial court
abused its discretion in excluding Dr. Wright’s testimony regarding the
victim’s medications.  Appellant’s third issue is overruled.  

This
Court’s Ruling

            The
judgment of the trial court is affirmed.  

 

 

                                                                                    TERRY
McCALL

                                                                                    JUSTICE        

 

March 22, 2012

Do not publish. 
See Tex. R. App. P.
47.2(b). 

Panel consists of: Wright, C.J.,

McCall, J., and Kalenak, J. 









[1]We note that appellant has not asserted that the
specific acts of misconduct gleaned from the victim’s medical records were
admissible for the limited purpose of explaining or supporting Dr. Wright’s
expert opinion.  See Tex. R.
Evid. 705; see also Valle v. State, 109 S.W.3d 500, 505–06 (Tex.
Crim. App. 2003) (trial court has discretion in conducting balancing test under
Rule 705(d)).  Appellant’s contention is that they were admissible to show
that the victim was the aggressor.