**Opinion issued November 6, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

**NO. 01-13-00845-CR**

_____

**DEAN JEROME WOOD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Case No. 1285552**

---

**MEMORANDUM OPINION**

A jury found appellant, Dean Jerome Wood, guilty of first-degree felony murder, and the trial court assessed his punishment at ninety-two years'

confinement.[1]  In his sole point of error, appellant argues that the trial court abused its discretion by admitting portions of his interrogation by Detective C. Abbondandolo and allowing the detective to testify about the interrogation.

We affirm.

## Background

The complainant, Flora Ryan, moved to Houston in 2000, after having been diagnosed with Alzheimer's, to live with her daughter, Mary Ostlund, and her granddaughter, Julie Ramirez.  Ryan, who was ninety-two years old in 2010, had a number of medical problems, including diabetes, thyroid problems, and cataracts.  Because of Ryan's condition, she could not be left alone.  For Ryan's safety, Ostlund installed special locks on the apartment that required a key to unlock from both the inside and outside.

From the time that Ryan moved to Houston in 2000 until May 2010, Ramirez was Ryan's primary caretaker.  In May 2010, Ramirez gave birth to a baby boy and needed assistance taking care of Ryan.  In 2010, Ostlund met appellant while she was working at the Salvation Army.  Appellant subsequently moved into the apartment to help with Ryan's care.  He slept on a loveseat in the

---

[1]  *See* TEX. PENAL CODE ANN. § 19.02(b)(3) (Vernon Supp. 2013) (providing elements of offense of felony murder); *id.* § 19.02(c) (providing that offense is first degree felony).

2

apartment right next to the couch on which Ryan slept, and he helped care for Ryan by helping her get around and by making her food.

On August 20, 2010, Ostlund went to work and Ryan stayed at the apartment with Ramirez and appellant. At some point during the day, Ramirez asked appellant to go to the store to get her cigarettes; he returned with beer and cigarettes, as well as a bottle of Steel Reserve malt liquor for himself. Ramirez then left the apartment with her baby to visit her neighbor and locked the apartment door when she exited, locking both Ryan and appellant inside the apartment. When Ramirez returned to her apartment, she noticed that Ryan was no longer on the couch, so she checked the bathroom. Ramirez testified that she found Ryan lying flat in the shower, naked, with the showerhead aimed at her mouth. Ramirez turned the water off and sat Ryan up before calling an ambulance. Ramirez told the 911 operator to bring the cops because she felt "something just wasn't right."

While Ramirez was on the phone with 911 and helping Ryan, appellant was on the porch smoking a cigarette. Ramirez testified that appellant had changed clothes and was then wearing a different pair of shorts than the pair he had been wearing when Ramirez left the apartment earlier. When Ramirez asked appellant to help lift Ryan out of the bathtub, he calmly stated: "grandma's dead." When the

3

paramedics arrived, Ramirez testified that appellant was being loud and "talking crap to the ambulance people and the cop that was there."

Officer Smith, a police officer who reported to the scene, testified that appellant was behaving in an erratic and violent manner. He and the other officers detained appellant because they were worried he might hurt someone.

Ryan's autopsy revealed a lot of bruising, mostly concentrated on her face, head, forearms, and wrists. Dr. Chu, the medical examiner, testified that Ryan's bruising was not consistent with a fall; rather, it was consistent with her head being hit with a blunt object "at least four [times], four impacts, and quite likely many more than that." In addition to the bruising, Ryan had a fractured toe and ribs and vaginal lacerations that were likely caused by "some kind of blunt trauma, penetrating trauma to the vagina." Dr. Chu concluded that the cause of Ryan's death was "blunt force injuries with cutaneous contusions, or bruising of the skin, and vaginal lacerations." The State also presented DNA evidence. Ryan's DNA was found on the inside of the shorts appellant had been wearing. Ryan's and appellant's DNA was found on beer bottles collected at the scene.

At trial, the State called Detective C. Abbondandolo, a homicide detective with the Houston Police Department, to testify regarding his interview of appellant in connection with Ryan's murder. Prior to Detective Abbondandolo's taking the stand, appellant objected to any testimony the detective might offer regarding his

4

ability to tell whether a suspect was telling the truth. Appellant specifically argued that Detective Abbondandolo's assertions that he did not believe appellant's statements during his interrogation should not be admitted "because it invades the province of the jury. They jury can look at [appellant's] behavior on that video and they can decide whether or not they think he's telling the truth. They don't need Officer Abbondandolo to tell 'em." The trial court overruled appellant's objection, stating, "I believe that if the State lays the foundation about his training and experience and identifying truth telling or not, that the jury can . . . consider it . . . since he's an expert when they decide to evaluate the witness and his or the defendant's behavior on the video tape." Appellant sought, and obtained, a running objection to any testimony regarding Detective Abbondandolo's beliefs regarding appellant's truthfulness during his interrogation.

Detective Abbondandolo first testified about the "interviewing style" he used to question suspects:

> What I like to do is talk to folks that are potential suspects for a while before I actually talk to them about the crime itself, to try to determine a little bit about them, to see how they answer questions that are not related to something that's terribly stressful but something that's related to something that they should be able to answer easily. That way I can establish a baseline for their physical behavior to pick up on points of deception when we get to the more difficult parts of the interview.

Appellant interrupted to clarify that he had a running objection to Abbondandolo's testimony, and the trial court agreed. Detective Abbondandolo

went on to testify generally about the "points of deception" he looked for when interviewing a suspect:

> Little subtle physical things that happen in the body when someone is trying to mask the truth. The stress level seems to get elevated, and during those times their body makes movements that they can't control. Even though they're trying to deceive you in what they're saying, there are things that the body does that makes it quite apparent that they're not being honest.

He described these involuntary movements as including "the twitching of the eyes, perhaps a tear that fall out unexpectedly, a licking of lips, looking in a certain direction when you talk to them." He emphasized that every person is different.

Detective Abbondandolo then testified regarding his interview of appellant and described the procedures he used, such as setting up recording equipment and reading appellant his *Miranda* warnings. Detective Abbondandolo testified that, contrary to his usual procedure, he did not remove appellant's handcuffs during the interview. He believed, based on appellant's facial expressions and physical behavior, that everyone would be safer if appellant remained handcuffed.

The State then sought to admit the video recording of appellant's interrogation that was conducted by Detective Abbondandolo on the day following Ryan's death. Appellant raised objections to various statements made by Detective Abbdondandolo in the video recording, such as his statements to appellant, "I don't think you're telling me the exact truth," "I don't think that you're being honest with me," and "[Y]our explanation doesn't match the physical evidence that's

6

there, doesn't match what Julie's saying."  Appellant argued that these statements were hearsay and that they invaded the province of the jury.  The trial court overruled these objections and admitted the video recording of appellant's interview.

In the video, Detective Abbondandolo questioned appellant about the events leading up to Ryan's death.  Appellant stated repeatedly that he could not remember much about what happened to Ryan because he had "blacked out" after drinking a large quantity of alcohol.  Appellant repeatedly told Detective Abbondandolo that he found Ryan not breathing on the sofa and attempted to perform CPR.  Appellant did not recall how Ryan got in the bathtub, he did not recall seeing any blood, and he stated that he would never hurt Ryan.  He could not explain why Ryan had injuries to her vaginal area, but he denied sexually assaulting her.

In response to appellant's account of what happened to Ryan, Detective Abbondandolo told appellant that he noticed appellant was "breathing really fast" and "talking really fast."  He told appellant, "And I don't mean to insult you, but from what you're telling me, I don't think you're telling me the exact truth."  He repeated this statement in various ways, telling appellant at different points in the interview, "I don't think you're being honest with me," and "Well, I don't think you're being straightforward with me."  When appellant asserted that he "must've

blacked out," Detective Abbondandolo stated, "I think you remember" and "I'm saying to you I don't believe the blacked out thing." Appellant persisted in stating that he did not know what had happened to Ryan. He stated at various points that he thought she died of a heart attack or that the police might have hurt her when they showed up.

After the video was played to the jury, the State proceeded with its questioning of Detective Abbondandolo, asking whether he observed any signs that appellant was intoxicated during the interview. Detective Abbondandolo stated that appellant did not appear to be under the influence of any substances and had clear speech. The State then asked:

[State]:      Now, you stated several times throughout the statement that you didn't believe what the defendant was telling you. Why didn't you believe what he was telling you?

[Detective]: The defendant was able to provide us with incredible details in great specifics about certain things, things that occurred that day, things that occurred in the past, but when we came to issues regarding the victim's death, he wasn't able to provide us with any details. His story changed dramatically from the bathing incident, whether he did or he didn't. There were all these nebulous answers in what he had to say, when it came down to issues regarding the death. Other things, he impressed the heck out of me with his ability to recall the baseball score, what type of pills she took, things like that. It was a clear sign of deception.

[State]:      Were there any other physical body signs of deceptions that you noticed while you were interviewing him?

8

[Detective]: Yes. . . .  Primarily it began with the movement of the legs.  We sat and had a discussion for quite a while about easy things, about going to school, where are you from, and things like that, sat motionless.  Once we got down to the difficult questions, you know, all of a sudden he had restless leg syndrome and his legs were all over the place.  I even asked him about it. . . .  [W]hen he looked at me I could tell he was looking through me and not looking at me.  Speaking incredibly fast was another sign where we're going to blur over the issue, like clogging one's ability to hear with all sorts of words.

Detective Abbondandolo testified that his involvement with the case ended with his interview of appellant.

The jury found appellant guilty, and the trial court assessed his punishment at ninety-two years' confinement.  This appeal followed.

**Admission of Evidence**

Appellant complains that the trial court abused its discretion in admitting the video recording of his interview with Detective Abbondandolo because the detective made statements to appellant such as, "I don't think you're telling me the exact truth."  Appellant also argues that the trial court erred in allowing Detective Abbondandolo to testify about his interrogation technique generally and in allowing him to testify regarding the opinion he formed of appellant's truthfulness during the interrogation.

We review a trial court's ruling admitting or excluding evidence for abuse of discretion.  *Ramos v. State*, 245 S.W.3d 410, 417–18 (Tex. Crim. App. 2008).  We

9

will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Id.* at 418; *see also Burke v. State*, 371 S.W.3d 252, 258 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd) (holding that trial court abuses its discretion in admissibility ruling when its ruling is arbitrary or unreasonable).

## A.    Video Recording of Appellant's Interrogation

During his interrogation of appellant, Detective Abbondandolo made statements such as "I don't think you're telling me the exact truth," "I don't think you're being honest with me," and "I'm saying to you I don't believe the blacked out thing."  At trial, appellant objected to the admission of these portions of his video-recorded statement on the basis that they constituted hearsay and because they provided improper opinion testimony.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d).  Statements offered only to show their effect on the listener are not hearsay. *See Young v. State*, 10 S.W.3d 705, 712 (Tex. App.—Texarkana 1999, pet. ref'd).  Furthermore, statements made by police officers during an interview are not hearsay if they are offered only to give context to the interviewee's replies, even if the officers accuse the interview of lying. *See Kirk v. State*, 199 S.W.3d 467, 478–79 (Tex. App.—Fort Worth 2006, pet. ref'd) (holding

10

that trial court did not abuse its discretion by overruling hearsay objection to statement by detective during tape-recorded interview that "I feel like maybe you've been a little untruthful with me").

Here, Detective Abbondandalo's statements were made in the course of his interrogation of appellant. The record supports a determination that the statements by Detective Abbondandolo were not offered to prove the truth of the matters asserted. The trial court reasonably could have concluded that Detective Abbondandolo's statements were offered either to provide context for appellant's statements or to show the effect of his statements on appellant. Accordingly, we hold that the trial court did not abuse its discretion by overruling appellant's hearsay objection.

Furthermore, appellant has not cited a case to us in which a police officer's investigative tactics during an interrogation were considered improper opinion testimony at trial, and we have found no such case.

Accordingly, we overrule appellant's arguments regarding the admission of his video-recorded interview.

**B.    Detective Abbondandolo's Trial Testimony**

Appellant also argues that the trial court erred in allowing Detective Abbondandolo to testify at trial regarding his interviewing technique in general and in allowing Abbondandolo to testify regarding the basis for his opinion, expressed

11

during the interrogation, that appellant was not telling the truth. At trial, appellant objected to this testimony on the basis that it invaded the province of the jury and provided improper opinion testimony.

The determination of a witness's truthfulness lies solely within the jury's province. *See Yount v. State*, 872 S.W.2d 706, 709–10 (Tex. Crim. App. 1993). Rule of Evidence 702 prohibits an expert witness from testifying that a particular witness is truthful. TEX. R. EVID. 702; *see Yount*, 872 S.W.2d at 712; *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997). Non-expert testimony may be offered to support the credibility of a witness by offering an opinion or reputation evidence as to the witness's character for truthfulness or untruthfulness, but lay witnesses may not testify to the witness's truthfulness in the particular allegations. *See* TEX. R. EVID. 608(a)(1); *Schutz*, 957 S.W.2d at 72.

Detective Abbondandolo testified that he often starts interviews with simple questions unrelated to the crime in order to "establish a baseline for [the suspect's] physical behavior to pick up on points of deception when [they] get to the more difficult parts of the interview." This testimony addresses Detective Abbondandolo's interrogation techniques generally and does not directly comment on appellant's credibility. *See, e.g.*, *Schutz*, 957 S.W.2d at 60 (discussing prohibition against expert witness opining directly on particular witness's truthfulness); *Reynolds v. State*, 227 S.W.3d 355, 366 (Tex. App.—Texarkana

12

2007, no pet.) (holding that testimony "explaining how [witness] interviews children and the steps taken to ask nonleading questions" does not constitute opinion on witness's credibility).

Assuming without deciding that Detective Abbondandolo's testimony regarding his reasons for not believing what appellant was telling him during the interrogation did constitute impermissible opinion testimony, the error was not harmful.

Under Rule of Appellate Procedure 44.2(b), we must disregard non-constitutional error that does not affect a defendant's "substantial rights," that is, if upon examining the record as a whole, there is a fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. TEX. R. APP. P. 44.2(b); *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). If the improperly admitted evidence did not influence the jury or had but a slight effect upon its deliberations, such non-constitutional error is harmless. *Coble*, 330 S.W.3d at 280. In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *See id.*; *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim.

App. 2002); *James v. State*, 335 S.W.3d 719, 727 (Tex. App.—Fort Worth 2011, no pet.).

The evidence of appellant's guilt was overwhelming. *See Motilla*, 78 S.W.3d at 360 (holding that weight of evidence of defendant's guilt is relevant factor in conducting harm analysis). Appellant and Ryan were the only two people in the apartment when Ryan sustained the injuries that ultimately killed her. The apartment door had a special lock to prevent Ryan from wandering away and neither appellant nor Ryan had the key. Ramirez testified that she left appellant alone with Ryan when she went to visit a neighbor, and when she returned, she found Ryan in the shower showing signs of serious injury.

The jury also had substantial physical evidence on which to base its verdict. The medical examiner testified extensively regarding the cause of Ryan's death, including blunt force trauma and lacerations to her vagina. Ryan's DNA was found on the inside of appellant's shorts where appellant's penis would have been in contact with the fabric, and both Ryan's and appellant's DNA was found on beer bottles collected from the scene.

Furthermore, the jury watched the video recording of appellant's interview and was able to assess appellant's credibility for itself. Appellant testified that he found Ryan on the sofa not breathing and that he attempted CPR. He also admitted that he was drunk and "must have blacked out" because he could not remember

how Ryan ended up in the shower. Appellant did not testify at trial or admit any evidence regarding what might have happened while he was "blacked out." Thus, his credibility was not a central issue in the case. And Detective Abbondandolo's testimony about his perceptions of appellant's truthfulness during the interview were relatively insignificant compared to the other evidence presented at trial.

Appellant argues that the "lengthy deliberations" and the jury notes requesting a transcript of appellant's interrogation, copies of Ostlund's and Ramirez's testimony, Ryan's medical and autopsy reports, and a copy of the receipt showing what appellant purchased at the store shortly before Ryan's death demonstrate that he suffered harm. The record demonstrates that the jury deliberated for approximately five hours in considering the evidence adduced over four days during the guilt-innocence phase of trial. Under the circumstances of this case, five hours of deliberation does not support appellant's claim that jury had difficulty reaching a verdict. Furthermore, none of the requests for copies or physical exhibits sought Detective Abbondandolo's testimony. Rather, the jury reviewed the transcript of appellant's interrogation, Ostlund's and Ramirez's testimony, and the physical evidence presented at trial.

Based on the entirety of the record, we have a fair assurance that the alleged error did not influence the jury or that it had but a slight effect. *See Coble*, 330 S.W.3d at 280; *Motilla*, 78 S.W.3d at 360.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.


                                                          Evelyn V. Keyes
                                                            Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

Do not publish. TEX. R. APP. P. 47.2(b).