

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00033-CR

ELIZABETH MONNIQUE
DUERSON

APPELLANT

V.

THE STATE OF TEXAS

STATE

----------

## FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In two issues that concern the trial court's decision to overrule evidentiary

objections during her trial for intoxication manslaughter,[2] appellant Elizabeth

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 49.08(a) (West 2011).

Monnique Duerson appeals her sentence of three years' confinement.[3] We affirm.

**Background Facts**

One early morning in January 2010, appellant, accompanied by her younger brother Benton "Billy" Crow, drove on Kemp Street in Wichita Falls while intoxicated. Appellant and Billy had just wrapped up a night of drinking and socializing at an apartment get-together and at a local bar called Fat Albert's.

Appellant and Billy planned to fly to appellant's residence in Florida and wanted to say goodbye to their brother Abraham Crow before their cross-country trip. While having an alcohol concentration of more than twice the legal limit,[4] appellant lost control of the car and crossed the road's median, hitting two trees and a light pole. The car ejected Billy. He died immediately.[5]

A grand jury indicted appellant with intoxication manslaughter. Before trial, the State designated Joe Lemond as an expert in crash investigations and reconstructions. Appellant filed a verified application to be placed on community supervision if she was convicted, and she also elected for the jury to assess her punishment if she was convicted.

---

[3]Appellant prays only that we "reverse the case for a new trial on punishment."

[4]*See* Tex. Penal Code Ann. § 49.01(2)(B) (West 2011).

[5]A medical examiner found that Billy died of massive blunt force trauma to his head and to other areas of his body.

2

While appellant was awaiting trial, one early morning in November 2011, she engaged in a physical altercation with her boyfriend in Wichita Falls. Specifically, after visiting Fat Albert's (where she had drunk alcohol before the accident that killed Billy) and drinking beer, appellant and her boyfriend verbally argued while he drove her home. Appellant got out of the car and walked toward her residence. Appellant's boyfriend eventually caught up to her and grabbed her arm in an attempt to bring her back inside his vehicle. Appellant, who testified at trial that she had become scared at that point, then punched her boyfriend in the mouth, resulting in him having a bloody lip and a loose tooth and her having a cut on her knuckle.

The police believed that appellant was the primary aggressor in the altercation, but the district attorney's office eventually dismissed a case relating to the altercation. Before appellant's intoxication manslaughter trial, the State provided written notice that if appellant was convicted, it planned to present evidence of the November 2011 incident concerning appellant's visit to Fat Albert's and her altercation with her boyfriend.

In front of a jury, appellant pled guilty to intoxication manslaughter. During the resulting unitary proceeding to determine her punishment,[6] appellant objected to testimony concerning the fact that she had visited Fat Albert's while

---

[6] See Fuller v. State, 253 S.W.3d 220, 227 (Tex. Crim. App. 2008) ("When a defendant pleads guilty to a jury, the jury need not return any verdict of guilty. The case simply proceeds with a unitary punishment hearing."), cert. denied, 555 U.S. 1105 (2009).

awaiting trial and was involved in a physical confrontation shortly thereafter. The trial court overruled this objection.

The State's expert witness, Lemond, concluded that on the night of appellant's accident, she was driving at a minimum speed of anywhere between seventy-three and ninety-four miles per hour. Appellant objected to Lemond's testimony under rule of evidence 702, claiming that he lacked sufficient knowledge of the underlying methodology and formula that he used in his testimony. The trial court overruled that objection as well, stating that Lemond's specialized knowledge in his field was sufficient to aid the jury in understanding the evidence or determining a fact or issue in the case.

After considering the evidence and arguments presented by the parties, the jury assessed appellant's punishment at three years' confinement, though appellant had asked the jury to consider an award of community supervision. The trial court sentenced appellant in accordance with the jury's verdict, and after appellant unsuccessfully sought a new trial on punishment, she brought this appeal.

**The Admission of Evidence Concerning Appellant's Return to Fat Albert's**

In her first issue, appellant argues that the trial court erred when it overruled her objection to the admission of evidence concerning her return to Fat Albert's for drinks while she was awaiting trial. Appellant contends that the evidence was wrongfully admitted under article 37.07 of the code of criminal procedure because it was not a "bad act." Specifically, appellant argues that for

evidence to be admissible under article 37.07, "there must be more than some melodramatic connection to the case; there must be some reprehension or moral repugnance that speaks to policy reasons underlying [article 37.07]."

We review a trial court's admission of evidence over a defendant's objection for an abuse of discretion. *Sandone v. State*, 394 S.W.3d 788, 791 (Tex. App.—Fort Worth 2013, no pet.). An abuse of discretion occurs when a trial court's decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *Id.*

"Code of Criminal Procedure Article 37.07, Section 3(a) governs the admissibility of evidence during the punishment phase of a non-capital trial." *Erazo v. State*, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004) (footnote omitted). The State contends that article 37.07 does not require evidence of a defendant's actions subsequent to an offense to be a "bad act" for a trial court to admit that evidence regarding the defendant's punishment. Article 37.07 does not expressly limit the admissibility of punishment evidence to bad acts; instead, it states that as relating to a defendant's punishment, a trial court may admit evidence of "any matter the court deems relevant to sentencing," including "but not limited to" the defendant's character or evidence of an extraneous crime or bad act[7] that is shown beyond a reasonable doubt to have been committed by

---

[7]Bad acts under article 37.07 are not required to qualify as criminal offenses. *See Haley v. State*, 173 S.W.3d 510, 514–15 (Tex. Crim. App. 2005); *Cox v. State*, 931 S.W.2d 349, 357 (Tex. App.—Fort Worth 1996) (holding that a defendant's act of following a woman to her apartment, jiggling her doorknob,

5

the defendant. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2013); *see Henderson v. State*, 29 S.W.3d 616, 626 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) ("[T]he plain language of article 37.07, section 3(a) indicates that evidence of a defendant's conduct may be admissible even if the conduct does not constitute an offense or bad act.").

In *Sims v. State*, during the punishment phase of a trial, the State introduced testimony regarding Sims's encounters with law enforcement while she was awaiting trial. 273 S.W.3d 291, 293 (Tex. Crim. App. 2008). Sims objected to testimony of a police officer who described an incident where Sims repeatedly changed her story when the officer responded to an alleged assault between Sims and a man. *Id.* The court of criminal appeals held that the trial court had not erred by admitting the testimony under article 37.07. *Id.* at 295–97. The court reiterated that testimony relating to a defendant's proper punishment needs only to be relevant to be admissible, and the court further stated,

> The Legislature has expressly provided that "relevant" punishment evidence includes, but is not limited to, both character evidence in the form of opinion testimony as well as extraneous-offense evidence. Because there are no discrete fact issues at the punishment phase of a non-capital trial, we have ruled that the definition of "relevant," as stated in Rule 401 of the Texas Rules of

and frightening her was admissible under article 37.07), *pet. dism'd*, 951 S.W.2d 5 (Tex. Crim. App. 1997); *see also Whittle v. State*, Nos. 02-03-00125-CR, 02-03-00126-CR, 2004 WL 102346, at *1 (Tex. App.—Fort Worth Jan. 22, 2004, pet. ref'd) (mem. op., not designated for publication) ("While possession of [sexual cartoon images] is not an illegal act, we do not agree with appellant that it is an 'innocent' act, nor do we agree that to be admissible under article 37.07, section 3(a)(1), the act must constitute a criminal offense.").

> Evidence, does not readily apply to Article 37.07. What is "relevant" to the punishment determination *is simply that which will assist the fact finder in deciding the appropriate sentence in a particular case.* When the jury assesses punishment, it must be able to tailor the sentence to the particular defendant, and relevance is simply "a question of what is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case."

*Id.* at 295 (emphasis added) (footnotes omitted) (quoting *Ellison v. State*, 201 S.W.3d 714, 719 (Tex. Crim. App. 2006)).

During its closing argument here, the State asked the jury to consider whether appellant's conduct while awaiting trial indicated suitability for community supervision. The court in *Ellison* explained that article 37.07 allows for evidence related to a defendant's suitability for community supervision, stating, "The actions by the Legislature in continually broadening Section 3(a)'s language and a plain reading of that section persuade us to conclude that suitability is a matter 'relevant to sentencing' under the current version of Article 37.07, Section 3(a) when a defendant seeks community supervision." 201 S.W.3d at 722.

Appellant argues that the evidence of her revisiting Fat Albert's and getting into a physical altercation with her boyfriend must have presented "some reprehension or moral repugnance that speaks to the policy reasons underlying" article 37.07, citing *Mendiola v. State*, 21 S.W.3d 282, 285 (Tex. Crim. App. 2000). But the court in *Mendiola* explained that admissibility under article 37.07 is a function of policy, and the court remanded the case to be viewed under the purview of *Rogers v. State*, 991 S.W.2d 263 (Tex. Crim. App. 1999). *Mendiola*,

21 S.W.3d at 285. The court in *Rogers* emphasized that trial courts may admit evidence during the punishment stage that relates to the likely recurrence of criminal behavior. 991 S.W.2d at 266.

The jury's awareness of appellant's behavior, while awaiting trial for intoxication manslaughter, of visiting the same bar where she had drunk alcohol before having the accident that killed her brother, drinking alcohol again, and exercising questionable judgment again after drinking alcohol by arguing with her boyfriend and then engaging in a physical altercation with him satisfies this emphasis on the policy reasons behind article 37.07. At trial, appellant conceded that returning to Fat Albert's to drink beer was not the "wisest choice" that she could have made. And appellant placed her ability to make wise choices in the future into relevance by seeking an award of community supervision.[8] Thus, we conclude that the trial court could have reasonably determined that the evidence of appellant's return to Fat Albert's and her subsequent altercation with her boyfriend was helpful to the jury in assessing appellant's punishment and was therefore admissible. *See Ex parte Rogers*, 369 S.W.3d 858, 863 (Tex. Crim. App. 2012) ("Relevance is a question of what is helpful to the jury to determine

---

[8]Appellant's counsel revealed in his opening statement that appellant was seeking to be placed on community supervision. Counsel asked the jury not to "continue [the] tragedy by incarcerating" appellant but to instead make a "wise decision [by leaving] a productive, beloved member of society with her family in a town in the economy." An employee with the Wichita County probation office, who appellant called to testify, indicated that if appellant was placed on community supervision, she would not be able to go to places where alcohol was served.

the appropriate sentence for the particular defendant."); *Erazo*, 144 S.W.3d at 491 ("[W]e have explained that relevance during the punishment phase of a non-capital trial is determined by what is *helpful* to the jury."); *see also Sims*, 273 S.W.3d at 296 ("In determining whether the appellant can adequately complete the demands of community supervision, a sentencer might rationally want to take into account testimony that the appellant lied to a peace officer.").

Because the trial court could have reasonably found that the State's evidence of appellant's behavior while awaiting trial met the standard of admissibility set forth by section 3(a)(1) of article 37.07, we hold that the trial court did not abuse its discretion by admitting the evidence, and we overrule appellant's first issue. *See Sandone*, 394 S.W.3d at 791.

### The Admission of Lemond's Testimony

In her second issue, appellant contends that the trial court erred by overruling her objection to Lemond's testimony because the testimony did not meet the standards for admission of expert testimony required by *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).[9]  In the trial court, appellant contended that Lemond was not fit to testify concerning conclusions that he made while reconstructing the scene of the offense because he had no

---

[9] *Kelly* requires science-based expert testimony to meet three criteria: "(a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied on the occasion in question."  824 S.W.2d at 573.

9

knowledge of the underlying methodology that he applied to formulate his conclusions.

Lemond testified that he did not know the underlying data in the formulas he used, the testing performed to yield the formulas, whether the science behind the formulas was peer-reviewed, or the formulas' rates of error. Although appellant claims that Lemond's lack of knowledge of the underlying data behind the formulas yielded unreliable testimony that the trial court improperly admitted, appellant testified that her car kept going "faster and faster" on the night of the offense and did not slow down. Along with that testimony, the trial court admitted autopsy reports detailing Billy's life-ending injuries and photographs of the scene. The photographs showed that the car appellant was driving had been torn apart, that the metal pole that Billy had hit was bent at an angle and was covered in Billy's blood, and that the remnants of Billy's brain, which had avulsed from his skull, remained on the street.

The State contends that unchallenged evidence presented to the jury indicates that appellant was traveling at a high speed and that with respect to Lemond's testimony on appellant's range of speed, he merely "put a number on the obvious." Thus, the State contends that even if the trial court erred by admitting Lemond's testimony about appellant's speed at the time of her crash, that admission was harmless error.

Assuming without deciding that the trial court improperly admitted Lemond's testimony, we must conduct a harm analysis to determine whether the

alleged error calls for reversal of the judgment.[10]  Tex. R. App. P. 44.2.  If the alleged error is not of a constitutional dimension, we apply rule 44.2(b) and disregard the alleged error if it did not affect appellant's substantial rights.  Tex. R. App. P. 44.2(b); *see Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).  Generally, error in the admission of evidence is not constitutional in nature and is therefore subject to a harm analysis under rule 44.2(b).  *James v. State*, 335 S.W.3d 719, 726 (Tex. App.—Fort Worth 2011, no pet.); *Matz v. State*, 21 S.W.3d 911, 912 (Tex. App.— Fort Worth 2000, pet. ref'd) (op. on remand).

A substantial right is affected when the error had a substantial and injurious effect in determining the jury's verdict.  *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).  But an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect*." Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In *King*, King was on trial for capital murder and objected to the admission of certain exhibits that the State presented and the trial court admitted into evidence.  953 S.W.2d at 271.  The exhibits contained, among other facts, information on King's previous incarcerations for theft and traffic tickets for the

---

[10]In her brief, appellant does not address how the admission of Lemond's testimony was harmful.

jury to consider during the punishment stage of King's trial for capital murder. *Id.* The court of criminal appeals assumed without deciding that the trial court had improperly admitted those exhibits but concluded that other, properly admitted evidence, including evidence of the brutal murder that King had committed, defused those exhibits' potential harm. *Id.* at 273.

Considering all of the evidence published to the jury in this case, we conclude that appellant's own testimony regarding her speed,[11] photographs showing the overwhelming damage to the car that appellant was driving on the night of the offense,[12] photographs showing the severity of Billy's life-ending injuries, photographs showing the severity of the damage appellant caused to the light pole, and a crime scene video conveying similar information[13] defused the potential harm of the trial court's allegedly improper admission of Lemond's testimony regarding his conclusions from the accident, including appellant's minimum speed and the manner in which Billy was ejected from the car and died. In other words, Lemond's objected-to testimony established that appellant was

---

[11]Appellant testified that as she was driving to Abraham's house, when she pushed the accelerator pedal, the "car started to go faster and faster." Appellant also testified that she attempted to slow down by pushing the brake pedal several times but that the car would not do so.

[12]The accident caused the back end of appellant's car to completely separate from the front end; parts of the car were scattered across a significant stretch of the road.

[13]Lemond spent a significant portion of his testimony before the jury narrating this video. Appellant did not object to the video's admission.

driving very fast, that she did not brake before the accident, and that the accident gruesomely caused Billy's death, and the unobjected-to evidence, including appellant's testimony, confirmed those facts. Thus, assuming without deciding that the trial court's admission of Lemond's testimony was erroneous, we conclude that the alleged error was harmless, and we overrule appellant's second issue. *See* Tex. R. App. P. 44.2(b); *King*, 953 S.W.2d at 271, 273.

## Conclusion

Having overruled appellant's issues, we affirm the trial court's judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  December 12, 2013