PD-1659-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/16/2015 1:28:17 PM
Accepted 1/16/2015 1:58:11 PM
ABEL ACOSTA
CLERK

FILED IN
COURT OF CRIMINAL APPEALS

JANUARY 16, 2015

ABEL ACOSTA, CLERK

**PD-1659-14**

## COURT OF CRIMINAL APPEALS OF TEXAS

### DEAN JEROME WOOD,
*Appellant,*

### VS.

### THE STATE OF TEXAS,
*Appellee.*

On Petition for Discretionary Review from the First Court of Appeals in Cause No. 01-13-00845-CR, affirming the conviction in Cause No. 1285552, from the 176th District Court of Harris County, Texas

### APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

**ALEXANDER BUNIN**
Chief Public Defender
Harris County, Texas

**BOB WICOFF**
Assistant Public Defender
Harris County, Texas
TBN 21422700
1201 Franklin, 13th floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278
bwicoff@pdo.hctx.net

Counsel for Appellant

i

## IDENTITY OF JUDGE, PARTIES AND COUNSEL

Trial Court Judge:

Hon. Stacey Bond
176th District Court
Harris County, Texas
1201 Franklin Street, 19th floor
Houston, Texas 77002

Parties to the Judgment:

Dean Jerome Wood
The State of Texas

Names and addresses of trial counsel (State):

Keri Fuller
Stephen Aslett
Assistant District Attorneys
Harris County, Texas
1201 Franklin Street, 6th floor
Houston, Texas 77002

Names and addresses of trial counsel (Defense):

Mark Hochglaube
Franklin Bynum
Assistant Public Defenders
Harris County, Texas
1201 Franklin Street, 13th floor
Houston, Texas 77002

Counsel on appeal for the State of Texas:

Eric Kugler
Assistant District Attorney
Harris County, Texas
1201 Franklin Street, 6th floor
Houston, Texas 77002

Counsel on appeal for the Appellant:

Bob Wicoff
Assistant Public Defender
Harris County, Texas
1201 Franklin Street, 13th floor
Houston, Texas 77002

# TABLE OF CONTENTS

**PAGE**

Identity of Judge, Parties and Counsel:       i

Table of Contents:       ii

Index of Authorities:       iii

Statement Regarding Oral Argument:       iv

Statement of the Case:       iv

Statement of Procedural History:       iv

Ground for Review       iv

The First Court of Appeals held that any error in allowing a police officer to provide repeated and improper opinion testimony regarding the Appellant's credibility had only a slight effect on the jury's verdict. Is this conclusion justified in light of the fact that the improper opinion testimony was repeated several times, the jury engaged in lengthy deliberations, the jury asked to view the tape recording in which the officer gave his improper opinion testimony, and the prosecutor adopted the officer's improper opinion in his closing argument?

Argument Under Ground for Review:       1

Prayer for Relief:       9

Certificate of Service:       9

Certificate of Compliance:       10

Appendix (*Wood v. State*):       attached

# INDEX OF AUTHORITIES

**PAGE**

## Cases

*Barshaw v. State*, 342 S.W.3d 91 (Tex. Crim. App. 2011) ............................................... 10, 11

*Hawkins v. State*, 135 S.W.3d 72 (Tex. Crim. App. 2004) ..................................................... 10

*Torres v. State*, 137 S.W.3d 191 (Tex. App.-Houston [1ˢᵗ Dist.] 2004, no pet.)............... 7-8

*Wood v. State*, No. 01-13-00845-CR, 2014 WL 5780273.............................................*passim*
   (Tex. App.-Houston [1st Dist.] Nov. 6, 2014, no pet. h.)(mem. op., not
    designated for publication)

## Statutes and Rules

Tex. R. App. P. 44.2(b)……………………………………………………………13

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant waives oral argument.

## STATEMENT OF THE CASE

Dean Jerome Wood was indicted in cause number 1285552 for Felony Murder, alleged to have occurred on or about August 20, 2010 (C.R. at 7); *See* Tex. Penal Code, § 19.02(b)(3). The case was tried in September of 2013 and a jury found Wood guilty (C.R. at 224). The trial court sentenced him to ninety-two (92) years in prison (C.R. at 225). No motion for new trial was filed.

## STATEMENT OF PROCEDURAL HISTORY

On November 6, 2014, the First Court of Appeals affirmed the Appellant's conviction in an unpublished memorandum opinion. *Wood v. State*, No. 01-13-00845-CR, 2014 WL 5780273 (Tex. App.-Houston [1st Dist.] Nov. 6, 2014, no pet. h.)(mem. op., not designated for publication). This Court extended the time to file the Petition for Discretionary Review until January 7, 2015.

## GROUND FOR REVIEW

The First Court of Appeals held that any error in allowing a police officer to provide repeated and improper opinion testimony regarding the Appellant's credibility had only a slight effect on the jury's verdict. Is this conclusion justified in light of the fact that the improper opinion testimony was repeated several times, the jury engaged in lengthy deliberations, the jury asked to view the tape recording in which the officer gave his improper opinion testimony, and the prosecutor adopted the officer's improper opinion in his closing argument?

## ARGUMENT UNDER GROUND FOR REVIEW

### A. The Appellant's argument at the court of appeals

The Appellant argued at the court of appeals that the trial court abused its discretion in allowing the jury to hear, over objections from defense counsel, Houston Police Department Officer Abbonandolo's repeated opinion that the Appellant was lying about his involvement in the death of the Complainant. The officer's opinion was provided both during his testimony at trial, and in numerous comments that he made during a videotaped interview of the Appellant that was played for the jury (State's exhibit 94; 6 R.R. at 126). The officer's opinion that the Appellant was lying was based in part on the Appellant's body language during the interview. At other times, he simply voiced the same conclusion without citing any reason.

The videotape of the interview was admitted during Officer Abbonandolo's testimony. Prior to the officer taking the stand and the videotape being played, defense counsel objected to both the videotape itself, and posed an objection to any opinions the officer might give during his testimony which gave an opinion that the Appellant was lying (6 R.R. at 104-105, 106, 110, 111-112). The trial court denied those objections, but the trial court did order the State to redact some portions of the interview where the officer told the Appellant that he could tell by his physical responses that he was lying (6 R.R. at 106-107; 110-111).

## B. The court of appeals opinion

The court of appeals held that there was no error in admitting the videotaped interview itself. *Opinion*, at *5-6. As to the Appellant's argument that the trial court also erred in allowing impermissible opinion testimony from the officer as to whether the Appellant was telling the truth, the court of appeals concluded as follows:

> Assuming without deciding that Detective Abbondandolo's testimony regarding his reasons for not believing what appellant was telling him during the interrogation did constitute impermissible opinion testimony, the error was not harmful.
>
> Under Rule of Appellate Procedure 44.2(b), we must disregard non-constitutional error that does not affect a defendant's "substantial rights," that is, if upon examining the record as a whole, there is a fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. Tex.R.App. P. 44.2(b); *Coble v. State,* 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). If the improperly admitted evidence did not influence the jury or had but a slight effect upon its deliberations, such non-constitutional error is harmless. *Coble,* 330 S.W.3d at 280. In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *See id.; Motilla v. State,* 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); *James v. State,* 335 S.W.3d 719, 727 (Tex. App.-Fort Worth 2011, no pet.).
>
> The evidence of appellant's guilt was overwhelming. *See Motilla,* 78 S.W.3d at 360 (holding that weight of evidence of defendant's guilt is relevant factor in conducting harm analysis). Appellant and Ryan were the only two people in the apartment when Ryan sustained the injuries that ultimately killed her. The apartment door had a special lock to prevent Ryan from wandering away and neither appellant nor Ryan had the key. Ramirez testified that she left appellant alone with Ryan when she went to visit a neighbor, and when she returned, she found Ryan in the shower showing signs of serious injury.
>
> The jury also had substantial physical evidence on which to base its verdict. The medical examiner testified extensively regarding the cause of Ryan's death, including blunt force trauma and lacerations to her vagina. Ryan's DNA was

found on the inside of appellant's shorts where appellant's penis would have been in contact with the fabric, and both Ryan's and appellant's DNA was found on beer bottles collected from the scene.

**\*7** Furthermore, the jury watched the video recording of appellant's interview and was able to assess appellant's credibility for itself. Appellant testified that he found Ryan on the sofa not breathing and that he attempted CPR. He also admitted that he was drunk and "must have blacked out" because he could not remember how Ryan ended up in the shower. Appellant did not testify at trial or admit any evidence regarding what might have happened while he was "blacked out." Thus, his credibility was not a central issue in the case. And Detective Abbondandolo's testimony about his perceptions of appellant's truthfulness during the interview were relatively insignificant compared to the other evidence presented at trial.

Appellant argues that the "lengthy deliberations" and the jury notes requesting a transcript of appellant's interrogation, copies of Ostlund's and Ramirez's testimony, Ryan's medical and autopsy reports, and a copy of the receipt showing what appellant purchased at the store shortly before Ryan's death demonstrate that he suffered harm. The record demonstrates that the jury deliberated for approximately five hours in considering the evidence adduced over four days during the guilt-innocence phase of trial. Under the circumstances of this case, five hours of deliberation does not support appellant's claim that jury had difficulty reaching a verdict. Furthermore, none of the requests for copies or physical exhibits sought Detective Abbondandolo's testimony. Rather, the jury reviewed the transcript of appellant's interrogation, Ostlund's and Ramirez's testimony, and the physical evidence presented at trial.

Based on the entirety of the record, we have a fair assurance that the alleged error did not influence the jury or that it had but a slight effect. *See Coble,* 330 S.W.3d at 280; *Motilla,* 78 S .W.3d at 360.

We overrule appellant's sole issue. *Opinion*, at \*6-\*7.

## C. Argument

As argued at the court of appeals below, lengthy deliberations by the jury may underscore the harmfulness of error in a non-constitutional harm analysis. *Torres v. State*, 137 S.W.3d 191, 198-199 (Tex. App.-Houston [1st Dist] 2004, no pet.). In *Torres*, the jury

deliberated for approximately six hours before reaching a verdict, sending out two notes in the process, one factor that the First Court of Appeals cited in that case in determining that the error in that case resulted in "some harm" requiring reversal. *Id.*, at 198. The First Court of Appeals in this case downplayed the length of deliberations in this case, observing that "[T]he record demonstrates that the jury deliberated for approximately five hours in considering the evidence adduced over four days during the guilt-innocence phase of the trial," indicating that "five hours of deliberation does not support appellant's claim that the jury had difficulty reaching a verdict." *Opinion* at *7.

Putting aside the question of how the court of appeals can reconcile its conclusion that five hours of deliberation is not a particularly long time to deliberate guilt-innocence in a case where they have noted that "[T]he evidence of appellant's guilt was overwhelming," it is not simply the length of time spent deliberating but what jury notes revealed as the issue that the jury may have been grappling with, in determining whether the complained-of error had an effect on the jury's verdict.

It makes sense to consider the contents of any jury notes in determining whether the error might have had an effect on the jury's verdict. Obviously, if the notes fairly suggest that the jury was struggling with the very issue that the alleged error pertained to, then those notes, coupled with a lengthy deliberation process, might reasonably suggest that the error had some effect on the jury's verdict. A reviewing court should hesitate to conclude that an error wasn't harmful, given the strength of the other evidence as *they* see it if, notwithstanding such other evidence, the particular lay jury that heard the case still struggled

to reach a verdict. A reviewing court should recognize and respect that fact, rather than substituting its own view that because the case shouldn't have been a close one in its mind, then the error at the trial was harmless.

The docket sheet in this case reflects that jurors retired to deliberate sometime around noon on September 24, 2013 (C.R. at 236). About an hour later, they sent out a note that began by requesting "a copy of the transcript of Officer Abby's (Abbonandolo's) interrogation of Defendant" (C.R. at 213). The note also requested the medical report from Bayshore Medical Hospital, where the complainant had been admitted for injuries on a date prior to the date she died. The note also requested the autopsy report. It is reasonable to infer from the contents of the note that the jury was focusing on the complainant's admission to Bayshore Hospital for injuries sustained on the occasion prior to the date she died, perhaps to compare such medical records to the autopsy report. This may have been to determine whether the prior injury (in which the Appellant played no part) contributed to the complainant's death. It may also have been a matter of trying to determine whether the prior injury may have involved abuse, and could shed some light on whether the Complainant's granddaughter, who was her caretaker prior to the Appellant, played some part in her death.

About an hour after the first note, the jury sent a second note, which asked "to see the Fiesta receipt and a picture of that purchase" (C.R. at 214). The only reasonable explanation of why the jury would want to inspect the Fiesta receipt is that they were trying to determine whether the testimony provided by the complainant's granddaughter, Julie

Ostlund, was credible, regarding when she went to Fiesta and what she bought there. Coupled with the first note, it is reasonable to infer that the jury was considering the issue of Julie's credibility and her possible involvement in her grandmother's death.

Still a third note was sent by the jury, this one an hour after the second (C.R. at 215). This note asked for a copy of "Julie's and Mary's testimony, and copy of Dean's interrogation in bunny suit." This note clearly suggests that the jury was focusing on the credibility of the three people who could possibly have killed the complainant. It was the second request for evidence of the interview between Officer Abbonandolo and the Appellant. It must be stressed that in terms of hearing the Appellant's version of events and assessing his credibility, the jury had nothing to refer to other than the videotape.

The lengthy deliberations, coupled with the contents of the jury notes, suggests that to this particular jury, the credibility of the Appellant, vis-à-vis Mary and especially Julie, was the most important issue in the case. The error in allowing Officer Abbonandolo to repeatedly assert that the Appellant was lying should give this court grave concern about whether the jury's verdict suffered from the effect of the error. *Barshaw v. State,* 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). The First Court of Appeals' "fair assurance that the alleged error did not influence the jury or that it had but a slight effect" should not supplant the clear evidence that the jury did struggle with the verdict, as evidenced by the length of deliberations and the notes sent out by the jury.

Additionally, the First Court of Appeals did not consider the fact that the error in allowing the officer to give his opinion testimony was repeated, not an isolated instance. This

Court has considered the fact that an error was isolated in concluding that it was not harmful. *Hawkins v. State*, 135 S.W.3d 72, 85 (Tex. Crim. App. 2004). The converse should also be true. Where an error is repeated with impunity, the likelihood that it affected the jury's verdict would be greater. In *Hawkins*, which involved improper argument by the prosecutor, the error was followed by immediate curative action by the court, and an apology and retraction from the prosecutor. *Id.*, at 85.

By contrast, the jury in this case was not merely exposed to an isolated instance of Officer Abbonandolo's improper opinion. The officer interjected his opinion that the Appellant was lying at least eight times during the videotaped interview (see pages 14-15, *supra*) which was itself prefaced by Abbonandolo's live testimony, in which he claimed to be able to detect the Appellant's lying because of the latter's body language (6 R.R. at 111-112). There were of course no curative measures taken by the trial court; the trial court implicitly sanctioned Abbonandolo's "expertise" by allowing it into evidence over objection. Because the trial court's erroneous ruling allowed the jury to be inundated with Abbonandolo's improper opinion on the most critical issue in the case, such factor also suggests that the error had "a substantial or injurious effect on the jury's verdict." The First Court of Appeals did not address the repetitiveness of the error in its opinion.

In assessing the likelihood that the jury's decision was improperly influenced, "other testimony and physical evidence" is a factor to be considered in conducting a harm analysis. *Barshaw,* 342 S.W.3d at 94. In this regard, the credibility of the Appellant, Mary and Julie may have become the jury's main focus because none of the eleven different items of evidence

that comprised the rape kit that was submitted to the crime lab from the complainant contained any DNA from the Appellant (7 R.R. at 169-170). Perhaps the jury's difficulty in reaching a verdict also had something to do with there being no indication that there was blood on either of the beer bottles that were found, bottles that the State suggested had been used in the offense (7 R.R. at 182). The absence of incriminating physical evidence that one might expect to be found on these items, coupled with the notes that were sent from the jury, again reinforces the likelihood that this jury's verdict turned on a credibility determination. Because the trial court's error directly impacted credibility issue, it had "a substantial or injurious effect on the jury's verdict."

It is finally worth noting that although the prosecutor did not directly mention Officer Abbonandolo's opinion during closing argument, he did adopt the officer's "body language" indicator of credibility:

> And let's not forget the demeanor. It's a minor part of all this, but how does he answer questions that have to do with where he went to college and what sport he played? He's calm, he's collected, he's not shuffling around, but when he's asked questions about Flora's death, he speeds through. He wants to change the subject. He's nervously shuffling. (8 R.R. at 32-33).

Just as it did not mention the repeated instances of the officer interjecting his opinion, neither did the First Court of Appeals mention the prosecutor's argument in deciding that the error, if any, was not harmful. The First Court of Appeals, in concluding that it had a "fair assurance" that the error was not harmful, improperly overlooked numerous indicators that suggested that the jury did not have such fair assurance, but was instead troubled by the very matters that the error would have impacted.

## PRAYER FOR RELIEF

For the reasons stated above, the Appellant moves that this Court grant his petition, hold that harm has been demonstrated under Tex. R. App. P. 44.2(b), and reverse the case for a new trial.

Respectfully submitted,

**Alexander Bunin**
Chief Public Defender
Harris County Texas

/s/ Bob Wicoff
**Bob Wicoff**
Assistant Public Defender
Harris County Texas
1201 Franklin, 13th floor
Houston Texas 77002
(713) 274-6781
TBA No. 21422700

Counsel for Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2015 copy of the foregoing petition has been served electronically on Alan Curry, who is the chief of the appellate division of the Harris County District Attorney's Office, through the efile system, and on the State Prosecuting Attorney.

/s/ Bob Wicoff

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitations of Tex. R. App. Proc. 9.4(e) and 9.4(i). It contains **2,553** words printed in a proportionally spaced typeface using Garamond 14 point font.

/s/ Bob Wicoff

# A P P E N D I X

**Opinion in *Wood v. State*, No. 01-13-00845-CR,**
**2014 WL 5780273 (Tex. App.-Houston [1st Dist.] Nov. 6, 2014, no pet. h.)**
**(mem. op., not designated for publication)**

2014 WL 5780273
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION
AND SIGNING OF OPINIONS.

**MEMORANDUM OPINION**
**Do not publish. TEX. R. APP. P. 47.2(b).**
Court of Appeals of Texas,
Houston (1st Dist.).

**Dean Jerome WOOD**, Appellant
v.
The STATE of Texas, Appellee.

No. 01–13–00845–CR. | Nov. 6, 2014.

On Appeal from the 176th District Court, Harris County,
Texas, Trial Court Case No. 1285552.

**Attorneys and Law Firms**

Franklin Bynum, for **Dean Jerome Wood**.

Alan Curry, Devon Anderson, for The State of Texas.

Panel consists of Chief Justice RADACK and Justices
JENNINGS and KEYES.

**MEMORANDUM OPINION**

EVELYN V. KEYES, Justice.

**\*1** A jury found appellant, **Dean Jerome Wood**, guilty of first-degree felony murder, and the trial court assessed his punishment at ninety-two years' confinement.[1] In his sole point of error, appellant argues that the trial court abused its discretion by admitting portions of his interrogation by Detective C. Abbondandolo and allowing the detective to testify about the interrogation.

We affirm.

**Background**

The complainant, Flora Ryan, moved to Houston in 2000, after having been diagnosed with Alzheimer's, to live with her daughter, Mary Ostlund, and her granddaughter, Julie Ramirez. Ryan, who was ninety-two years old in 2010, had a number of medical problems, including diabetes, thyroid problems, and cataracts. Because of Ryan's condition, she could not be left alone. For Ryan's safety, Ostlund installed special locks on the apartment that required a key to unlock from both the inside and outside.

From the time that Ryan moved to Houston in 2000 until May 2010, Ramirez was Ryan's primary caretaker. In May 2010, Ramirez gave birth to a baby boy and needed assistance taking care of Ryan. In 2010, Ostlund met appellant while she was working at the Salvation Army. Appellant subsequently moved into the apartment to help with Ryan's care. He slept on a loveseat in the apartment right next to the couch on which Ryan slept, and he helped care for Ryan by helping her get around and by making her food.

On August 20, 2010, Ostlund went to work and Ryan stayed at the apartment with Ramirez and appellant. At some point during the day, Ramirez asked appellant to go to the store to get her cigarettes; he returned with beer and cigarettes, as well as a bottle of Steel Reserve malt liquor for himself. Ramirez then left the apartment with her baby to visit her neighbor and locked the apartment door when she exited, locking both Ryan and appellant inside the apartment. When Ramirez returned to her apartment, she noticed that Ryan was no longer on the couch, so she checked the bathroom. Ramirez testified that she found Ryan lying flat in the shower, naked, with the showerhead aimed at her mouth. Ramirez turned the water off and sat Ryan up before calling an ambulance. Ramirez told the 911 operator to bring the cops because she felt "something just wasn't right."

While Ramirez was on the phone with 911 and helping Ryan, appellant was on the porch smoking a cigarette. Ramirez testified that appellant had changed clothes and was then wearing a different pair of shorts than the pair he had been wearing when Ramirez left the apartment earlier. When Ramirez asked appellant to help lift Ryan out of the bathtub, he calmly stated: "grandma's dead." When the paramedics arrived, Ramirez testified that appellant was being loud and "talking crap to the ambulance people and the cop that was there."

Officer Smith, a police officer who reported to the scene, testified that appellant was behaving in an erratic and violent manner. He and the other officers detained appellant because they were worried he might hurt someone.

**\*2** Ryan's autopsy revealed a lot of bruising, mostly concentrated on her face, head, forearms, and wrists. Dr. Chu, the medical examiner, testified that Ryan's bruising was not consistent with a fall; rather, it was consistent with her head being hit with a blunt object "at least four [times], four impacts, and quite likely many more than that." In addition to the bruising, Ryan had a fractured toe

and ribs and vaginal lacerations that were likely caused by "some kind of blunt trauma, penetrating trauma to the vagina." Dr. Chu concluded that the cause of Ryan's death was "blunt force injuries with cutaneous contusions, or bruising of the skin, and vaginal lacerations." The State also presented DNA evidence. Ryan's DNA was found on the inside of the shorts appellant had been wearing. Ryan's and appellant's DNA was found on beer bottles collected at the scene.

At trial, the State called Detective C. Abbondandolo, a homicide detective with the Houston Police Department, to testify regarding his interview of appellant in connection with Ryan's murder. Prior to Detective Abbondandolo's taking the stand, appellant objected to any testimony the detective might offer regarding his ability to tell whether a suspect was telling the truth. Appellant specifically argued that Detective Abbondandolo's assertions that he did not believe appellant's statements during his interrogation should not be admitted "because it invades the province of the jury. They jury can look at [appellant's] behavior on that video and they can decide whether or not they think he's telling the truth. They don't need Officer Abbondandolo to tell 'em." The trial court overruled appellant's objection, stating, "I believe that if the State lays the foundation about his training and experience and identifying truth telling or not, that the jury can ... consider it ... since he's an expert when they decide to evaluate the witness and his or the defendant's behavior on the video tape." Appellant sought, and obtained, a running objection to any testimony regarding Detective Abbondandolo's beliefs regarding appellant's truthfulness during his interrogation.

Detective Abbondandolo first testified about the "interviewing style" he used to question suspects:

> What I like to do is talk to folks that are potential suspects for a while before I actually talk to them about the crime itself, to try to determine a little bit about them, to see how they answer questions that are not related to something that's terribly stressful but something that's related to something that they should be able to answer easily. That way I can establish a baseline for their physical behavior to pick up on points of deception when we get to the more difficult parts of the interview.

Appellant interrupted to clarify that he had a running objection to Abbondandolo's testimony, and the trial court agreed. Detective Abbondandolo went on to testify generally about the "points of deception" he looked for when interviewing a suspect:

*3 Little subtle physical things that happen in the body when someone is trying to mask the truth. The stress level seems to get elevated, and during those times their body makes movements that they can't control. Even though they're trying to deceive you in what they're saying, there are things that the body does that makes it quite apparent that they're not being honest.

He described these involuntary movements as including "the twitching of the eyes, perhaps a tear that fall out unexpectedly, a licking of lips, looking in a certain direction when you talk to them." He emphasized that every person is different.

Detective Abbondandolo then testified regarding his interview of appellant and described the procedures he used, such as setting up recording equipment and reading appellant his *Miranda* warnings. Detective Abbondandolo testified that, contrary to his usual procedure, he did not remove appellant's handcuffs during the interview. He believed, based on appellant's facial expressions and physical behavior, that everyone would be safer if appellant remained handcuffed.

The State then sought to admit the video recording of appellant's interrogation that was conducted by Detective Abbondandolo on the day following Ryan's death. Appellant raised objections to various statements made by Detective Abbdondandolo in the video recording, such as his statements to appellant, "I don't think you're telling me the exact truth," "I don't think that you're being honest with me," and "[Y]our explanation doesn't match the physical evidence that's there, doesn't match what Julie's saying." Appellant argued that these statements were hearsay and that they invaded the province of the jury. The trial court overruled these objections and admitted the video recording of appellant's interview.

In the video, Detective Abbondandolo questioned appellant about the events leading up to Ryan's death. Appellant stated repeatedly that he could not remember much about what happened to Ryan because he had "blacked out" after drinking a large quantity of alcohol. Appellant repeatedly told Detective Abbondandolo that he found Ryan not breathing on the sofa and attempted to perform CPR. Appellant did not recall how Ryan got in the bathtub, he did not recall seeing any blood, and he stated that he would never hurt Ryan. He could not explain why Ryan had injuries to her vaginal area, but he denied sexually assaulting her.

In response to appellant's account of what happened to Ryan, Detective Abbondandolo told appellant that he

noticed appellant was "breathing really fast" and "talking really fast." He told appellant, "And I don't mean to insult you, but from what you're telling me, I don't think you're telling me the exact truth." He repeated this statement in various ways, telling appellant at different points in the interview, "I don't think you're being honest with me," and "Well, I don't think you're being straightforward with me." When appellant asserted that he "must've blacked out," Detective Abbondandolo stated, "I think you remember" and "I'm saying to you I don't believe the blacked out thing." Appellant persisted in stating that he did not know what had happened to Ryan. He stated at various points that he thought she died of a heart attack or that the police might have hurt her when they showed up.

**\*4** After the video was played to the jury, the State proceeded with its questioning of Detective Abbondandolo, asking whether he observed any signs that appellant was intoxicated during the interview. Detective Abbondandolo stated that appellant did not appear to be under the influence of any substances and had clear speech. The State then asked:

> [State]: Now, you stated several times throughout the statement that you didn't believe what the defendant was telling you. Why didn't you believe what he was telling you?
>
> [Detective]: The defendant was able to provide us with incredible details in great specifics about certain things, things that occurred that day, things that occurred in the past, but when we came to issues regarding the victim's death, he wasn't able to provide us with any details. His story changed dramatically from the bathing incident, whether he did or he didn't. There were all these nebulous answers in what he had to say, when it came down to issues regarding the death. Other things, he impressed the heck out of me with his ability to recall the baseball score, what type of pills she took, things like that. It was a clear sign of deception.
>
> [State]: Were there any other physical body signs of deceptions that you noticed while you were interviewing him?
>
> [Detective]: Yes.... Primarily it began with the movement of the legs. We sat and had a discussion for quite a while about easy things, about going to school, where are you from, and things like that, sat motionless. Once we got down to the difficult questions, you know, all of a sudden he had restless leg syndrome and his legs were all over the place. I even asked him about it.... [W]hen he looked at me I could tell he was looking through me and not looking at me. Speaking incredibly fast was another sign where we're going to blur over the issue, like clogging one's ability to hear with all sorts of words.

Detective Abbondandolo testified that his involvement with the case ended with his interview of appellant.

The jury found appellant guilty, and the trial court assessed his punishment at ninety-two years' confinement. This appeal followed.

## Admission of Evidence

Appellant complains that the trial court abused its discretion in admitting the video recording of his interview with Detective Abbondandolo because the detective made statements to appellant such as, "I don't think you're telling me the exact truth." Appellant also argues that the trial court erred in allowing Detective Abbondandolo to testify about his interrogation technique generally and in allowing him to testify regarding the opinion he formed of appellant's truthfulness during the interrogation.

We review a trial court's ruling admitting or excluding evidence for abuse of discretion. *Ramos v. State,* 245 S.W.3d 410, 417–18 (Tex.Crim.App.2008). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Id.* at 418; *see also Burke v. State,* 371 S.W.3d 252, 258 (Tex.App.-Houston [1st Dist.] 2011, pet. dism'd) (holding that trial court abuses its discretion in admissibility ruling when its ruling is arbitrary or unreasonable).

### A. Video Recording of Appellant's Interrogation

**\*5** During his interrogation of appellant, Detective Abbondandolo made statements such as "I don't think you're telling me the exact truth," "I don't think you're being honest with me," and "I'm saying to you I don't believe the blacked out thing." At trial, appellant objected to the admission of these portions of his video-recorded statement on the basis that they constituted hearsay and because they provided improper opinion testimony.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX.R. EVID. 801(d). Statements offered only to show their effect on the listener are not hearsay. *See Young v. State,* 10 S.W.3d 705, 712 (Tex.App.-Texarkana 1999, pet. ref'd). Furthermore, statements made by police officers during an interview are not hearsay if they are offered only to give context to the interviewee's replies, even if the officers accuse the interview of lying. *See Kirk v. State,* 199 S.W.3d 467, 478–79 (Tex.App.-Fort Worth 2006, pet. ref'd) (holding that trial court did not abuse its discretion by overruling hearsay objection to statement by

14

detective during tape-recorded interview that "I feel like maybe you've been a little untruthful with me").

Here, Detective Abbondandalo's statements were made in the course of his interrogation of appellant. The record supports a determination that the statements by Detective Abbondandolo were not offered to prove the truth of the matters asserted. The trial court reasonably could have concluded that Detective Abbondandolo's statements were offered either to provide context for appellant's statements or to show the effect of his statements on appellant. Accordingly, we hold that the trial court did not abuse its discretion by overruling appellant's hearsay objection.

Furthermore, appellant has not cited a case to us in which a police officer's investigative tactics during an interrogation were considered improper opinion testimony at trial, and we have found no such case.

Accordingly, we overrule appellant's arguments regarding the admission of his video-recorded interview.

## B. Detective Abbondandolo's Trial Testimony

Appellant also argues that the trial court erred in allowing Detective Abbondandolo to testify at trial regarding his interviewing technique in general and in allowing Abbondandolo to testify regarding the basis for his opinion, expressed during the interrogation, that appellant was not telling the truth. At trial, appellant objected to this testimony on the basis that it invaded the province of the jury and provided improper opinion testimony.

The determination of a witness's truthfulness lies solely within the jury's province. *See Yount v. State,* 872 S.W.2d 706, 709–10 (Tex.Crim.App.1993). Rule of Evidence 702 prohibits an expert witness from testifying that a particular witness is truthful. TEX.R. EVID. 702; *see Yount,* 872 S.W.2d at 712; *Schutz v.. State,* 957 S.W.2d 52, 59 (Tex.Crim.App.1997). Non-expert testimony may be offered to support the credibility of a witness by offering an opinion or reputation evidence as to the witness's character for truthfulness or untruthfulness, but lay witnesses may not testify to the witness's truthfulness in the particular allegations. *See* TEX.R. EVID. 608(a)(1); *Schutz,* 957 S .W.2d at 72.

**\*6** Detective Abbondandolo testified that he often starts interviews with simple questions unrelated to the crime in order to "establish a baseline for [the suspect's] physical behavior to pick up on points of deception when [they] get to the more difficult parts of the interview." This testimony addresses Detective Abbondandolo's interrogation techniques generally and does not directly comment on appellant's credibility. *See, e.g., Schutz,* 957 S.W.2d at 60 (discussing prohibition against expert

witness opining directly on particular witness's truthfulness); *Reynolds v. State,* 227 S.W.3d 355, 366 (Tex.App.-Texarkana 2007, no pet.) (holding that testimony "explaining how [witness] interviews children and the steps taken to ask nonleading questions" does not constitute opinion on witness's credibility).

Assuming without deciding that Detective Abbondandolo's testimony regarding his reasons for not believing what appellant was telling him during the interrogation did constitute impermissible opinion testimony, the error was not harmful.

Under Rule of Appellate Procedure 44.2(b), we must disregard non-constitutional error that does not affect a defendant's "substantial rights," that is, if upon examining the record as a whole, there is a fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. Tex.R.App. P. 44.2(b); *Coble v. State,* 330 S.W.3d 253, 280 (Tex.Crim.App.2010). If the improperly admitted evidence did not influence the jury or had but a slight effect upon its deliberations, such non-constitutional error is harmless. *Coble,* 330 S.W.3d at 280. In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *See id.; Motilla v. State,* 78 S.W.3d 352, 355 (Tex.Crim.App.2002); *James v. State,* 335 S.W.3d 719, 727 (Tex.App.-Fort Worth 2011, no pet.).

The evidence of appellant's guilt was overwhelming. *See Motilla,* 78 S.W.3d at 360 (holding that weight of evidence of defendant's guilt is relevant factor in conducting harm analysis). Appellant and Ryan were the only two people in the apartment when Ryan sustained the injuries that ultimately killed her. The apartment door had a special lock to prevent Ryan from wandering away and neither appellant nor Ryan had the key. Ramirez testified that she left appellant alone with Ryan when she went to visit a neighbor, and when she returned, she found Ryan in the shower showing signs of serious injury.

The jury also had substantial physical evidence on which to base its verdict. The medical examiner testified extensively regarding the cause of Ryan's death, including blunt force trauma and lacerations to her vagina. Ryan's DNA was found on the inside of appellant's shorts where appellant's penis would have been in contact with the fabric, and both Ryan's and appellant's DNA was found on beer bottles collected from the scene.

**\*7** Furthermore, the jury watched the video recording of appellant's interview and was able to assess appellant's credibility for itself. Appellant testified that he found

15

Ryan on the sofa not breathing and that he attempted CPR. He also admitted that he was drunk and "must have blacked out" because he could not remember how Ryan ended up in the shower. Appellant did not testify at trial or admit any evidence regarding what might have happened while he was "blacked out." Thus, his credibility was not a central issue in the case. And Detective Abbondandolo's testimony about his perceptions of appellant's truthfulness during the interview were relatively insignificant compared to the other evidence presented at trial.

Appellant argues that the "lengthy deliberations" and the jury notes requesting a transcript of appellant's interrogation, copies of Ostlund's and Ramirez's testimony, Ryan's medical and autopsy reports, and a copy of the receipt showing what appellant purchased at the store shortly before Ryan's death demonstrate that he suffered harm. The record demonstrates that the jury deliberated for approximately five hours in considering the evidence adduced over four days during the guilt-innocence phase of trial. Under the circumstances of this case, five hours of deliberation does not support appellant's claim that jury had difficulty reaching a verdict. Furthermore, none of the requests for copies or physical exhibits sought Detective Abbondandolo's testimony. Rather, the jury reviewed the transcript of appellant's interrogation, Ostlund's and Ramirez's testimony, and the physical evidence presented at trial.

Based on the entirety of the record, we have a fair assurance that the alleged error did not influence the jury or that it had but a slight effect. *See Coble,* 330 S.W.3d at 280; *Motilla,* 78 S .W.3d at 360.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Footnotes

[1] *See* TEX. PENAL CODE ANN. § 19.02(b)(3) (Vernon Supp.2013) (providing elements of offense of felony murder); *id.* § 19 .02(c) (providing that offense is first degree felony).

---

**End of Document**                                                   © 2015 Thomson Reuters. No claim to original U.S. Government Works.

16