

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00354-CR

_____

TRINIDAD BARGOS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court No. 1573995D

---

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Mike Wallach

## MEMORANDUM OPINION

A jury convicted Appellant Trinidad Bargos of assault bodily injury of a family or household member with a prior conviction for the same offense, a third-degree felony. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(2)(A). At the punishment phase, the trial court found the repeat offender notice true (a prior felony conviction for assault of a family or household member with a previous conviction for the same offense) and sentenced Bargos to twelve years' imprisonment. Bargos appealed.

In two points, Bargos argues that the trial court erred when (1) it allowed one of the State's witnesses to testify as an expert on strangulation and (2) it refused his request for a presentence investigation report (PSI). In the first instance, we hold that the error, if any, was harmless because the jury did not convict Bargos of any offense involving strangulation. In the second instance, we hold that the trial court erred but that the error was harmless. We overrule both of Bargos's points and affirm the trial court's judgment.

## I. The Expert Witness on Strangulation

### A. The State alleged that Bargos had strangled the complainant.

In the indictment, the State alleged that Bargos had committed the offense of assault bodily injury of a family or household member by impeding the breathing or circulation of the blood of the complainant by applying pressure to her throat or neck with his hands and that Bargos had a prior conviction for assault causing bodily injury

to a family or household member. *See id.* § 22.01(b-3). Strangulation was thus one of the State's allegations.

## B. The State presented an expert to testify about strangulation.

During the trial's guilt portion, the State presented Nurse Mary Ann Contreras as an expert on strangulation. Bargos challenged only her qualifications to testify as an expert on the specific physiological effects of strangulation. The trial court overruled Bargos's objection, and Nurse Contreras testified before the jury.

## C. Bargos testified and asserted that he had acted in self-defense.

Bargos also testified during the trial's guilt phase. Initially he denied placing his hands on the complainant's neck; later he acknowledged that it was possible that he had placed his hands on her neck. Regardless of where his hands were, he maintained that he had acted in self-defense.

He explained the sequence of events. The dispute started with the complainant's asking him to buy some cigarettes. Bargos responded that he wanted to wait until 10 o'clock for the store to open. The complainant then threw a temper tantrum and struck him on the head with a phone. A photo showed a knot on his head where the complainant had hit him, and another photo showed a bite mark on his neck where she had bitten him. Bargos said that the complainant had also grabbed a pair of scissors, used the scissors to poke and slash at him, and cut his shirt. Bargos added,

That's when I reacted. I managed to get the scissors out of her hand. I threw them on the desk, and we walked towards the wall.

Never did I grab her from the neck with two hands. I remember grabbing her from her arms and upper chest maybe, but everything went dark at that time, so I really don't remember where the bite mark came from.

. . . .

. . . . At the time I had her pinned against the wall, I was . . .upset, angry. I was calling . . . out . . . her name, cursing, asking her why, what's wrong and, you know, like what was missing, stuff like that.

And then . . . I guess she had a minor seizure, but she has those -- I mean, she's had them throughout our relationship even when we don't fight. At that time --

. . . .

. . . . I slid her down the wall. I didn't let her fall. I slid her down the wall[ and] laid her down until she c[a]me back. It wasn't but about two minutes before she came back to her senses.

I picked her up. When I stood her on her two feet, she took off running. And I guess she made it through -- to the . . . office and used their phone.

When cross-examined, Bargos admitted that it was possible that he had grabbed the complainant's neck, but he maintained that everything happened very quickly and that he did not remember. Bargos also admitted that photos taken of the complainant on the date of the offense showed marks on her neck. Bargos insisted that the complainant had assaulted him and that he was the victim.

**D. The charge included strangulation, but the jury verdict did not.**

Self-defense was included in the jury charge, but it did Bargos no good. The jury found him guilty of the lesser-included offense of assault bodily injury of a family or household member with a prior conviction, a third-degree felony. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(2)(A).

In the process, the jury effectively acquitted Bargos of the greater offense, a second-degree felony—assault bodily injury of a family or household member by impeding the breathing or circulation of the blood of the victim with a prior conviction. *See id.* § 22.01(b-3). When a jury is given the option of convicting a defendant on either a greater or lesser-included offense, a guilty verdict on the lesser-included offense impliedly acquits the defendant of the greater offense. *State v. Restrepo*, 878 S.W.2d 327, 328 (Tex. App.—Waco 1994, pet. dism'd).

Finally, the jury also passed on convicting Bargos of assault bodily injury of a family or household member by impeding the breathing or circulation of the blood of the victim (without a prior conviction). *See* Tex. Penal Code Ann. § 22.01(b)(2)(B). This offense was an alternate way to commit a third-degree felony. *See id.*

Thus, given two opportunities to convict Bargos of an offense including strangulation, the jury passed both times.

**E. Bargos must show both an abuse of discretion and harm.**

**1. Abuse of discretion**

When the trial court admits expert testimony over an objection, we review the trial court's ruling for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). A trial court abuses its discretion when it rules arbitrarily or unreasonably. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Provided the trial court rules within the zone of reasonable disagreement, it does not abuse its discretion. *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008).

**2. Expert testimony**

Rule 702 allows expert testimony when the witness is "qualified as an expert by knowledge, skill, experience, training, or education," and the witness's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Tex. R. Evid. 702. The trial court must make three separate inquiries before admitting expert testimony:

(1) Qualification (whether the witness qualifies as an expert by reason of the witness's knowledge, skill, experience, training, or education);

(2) Reliability (whether the subject matter of the testimony is an appropriate one for expert testimony); and

(3) Relevance (whether admitting the expert testimony will actually assist the factfinder in deciding the case).

6

*Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). A trial court acts as a "gatekeeper" when considering the reliability and relevance of expert testimony. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010).

### 3. Harm

A trial court's erroneous admission or exclusion of evidence that merely offends the rules of evidence is nonconstitutional error governed by Rule 44.2(b). Tex. R. App. P. 44.2(b); *see James v. State*, 335 S.W.3d 719, 726 (Tex. App.—Fort Worth 2011, no pet.). Rule 44.2(b) requires us to disregard any nonconstitutional error that does not affect an appellant's substantial rights. Tex. R. App. P. 44.2(b). An error affects a substantial right when it has a "substantial and injurious effect or influence in determining the jury's verdict." *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005). Put another way, an error does not affect a substantial right if we have fair assurance that it did not influence the jury or that it had but a slight effect. *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). In determining whether an error affected an appellant's substantial rights, we review the record as a whole—any admitted testimony or physical evidence, the nature of the evidence supporting the verdict, the character of the error, and how the error might interface with the evidence. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory, any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Haley*, 173 S.W.3d at 518–19; *Motilla*, 78 S.W.3d at 355–56.

**F. Regardless of whether Bargos can show error, he cannot show harm.**

Even assuming that Bargos could show error, we hold that his substantial rights were not affected, so we proceed directly to our harm analysis. Bargos challenged Nurse Contreras's testifying about the physiological effects of strangulation. Despite being given two opportunities, the jury did not convict Bargos of any offense involving strangulation. Without strangulation, Nurse Contreras's objected-to testimony was irrelevant.

Bargos contends that Nurse Contreras's testimony was harmful because it "served to absolve the complainant's complete inability to recall with any degree of accuracy the events of the purported assault." The complainant maintained that she had lost consciousness during the assault and that she did not remember everything, and Nurse Contreras testified that if a strangled person blacks out, the person will experience memory loss. We are not persuaded that Nurse Contreras's testimony harmed Bargos.

If memory loss is a consequence of blacking out from strangulation, the jurors could have concluded that the complainant's alleged memory loss was consistent with blacking out from strangulation and, therefore, that she was strangled. Yet the jurors did not find that she was strangled. The complainant's alleged memory loss would need some other explanation.

One possible explanation was that the complainant had suffered a seizure. While testifying, the complainant twice said that her experience was akin to a seizure.

She stated, "I just remember like, . . ., everything like -- like I was having a seizure, . . ., and I couldn't see nothing. And I could barely hear, you know, and I was . . . trying to feel to get up, and I couldn't . . . get up, you know, because everything was . . . wobbly." Moments later, she reaffirmed having seizure-like symptoms: "All I remember is . . . like being able to . . . kind of not -- not see or not hear really, but just everything -- like . . . I was having a seizure, . . ., and then . . . it took a good minute for me to be able to see and stand up . . . ." A seizure was precisely what Bargos thought that the complainant had suffered. The complainant's claimed memory loss would have supported Bargos's version of the events.

Another possible explanation for the complainant's alleged memory loss was that she was lying. The verdicts show that the jury disbelieved her testimony that Bargos had strangled her. The jury could have discounted her testimony about memory loss too.

In short, once the jury rejected strangulation, the jury necessarily rejected strangulation as an explanation for the complainant's purported memory loss. Far from absolving the complainant of her lack of memory, Nurse Contreras's testimony effectively boxed the complainant into a corner. The complainant's purported memory loss needed some other explanation, and other possible explanations supported Bargos's position—the complainant had suffered a seizure, and the complainant was not being honest about what had happened.

9

Moreover, Bargos asserted that he acted in self-defense. He described the complainant as attacking him with a phone and a pair of scissors. "A person is entitled to act in self-defense to an assault." *Gamino v. State*, 480 S.W.3d 80, 89 (Tex. App.—Fort Worth 2015), *aff'd*, 537 S.W.3d 507 (Tex. Crim. App. 2017). When relating what happened, a defendant is "not required to concede the State's version of the events." *Id.* at 88. Bargos admitted that he had engaged in some sort of altercation with the complainant that became physical but disputed its nature (whether it involved strangulation) and his role in it (whether he acted in self-defense). Even though Bargos seemed to contradict himself, contradictory evidence is not necessarily fatal for purposes of self-defense. *See id.* at 89. Because Bargos himself provided some evidence that his dispute with the complainant became physical (information that Nurse Contreras's generic testimony about the physiological effects of strangulation could not and did not provide), and because the jury did not convict Bargos of any offense involving strangulation, Nurse Contreras's complained-of testimony became superfluous. We thus have a fair assurance that her testimony did not influence the jury's verdict. *See Solomon*, 49 S.W.3d at 365.

Because the trial court's error, if any, in admitting Nurse Contrera's testimony was harmless, we overrule Bargos's first point.

## II. The PSI

### A. The trial court denied Bargos's request for a PSI.

After the jury found Bargos guilty, Bargos requested a PSI. The State asserted that he was not entitled to one, the trial court agreed, and the trial court denied the request.

In Bargos's second point, he contends that the trial court erred by refusing his request for a PSI. The State responds that the trial court did not err but that even if it did, the error was harmless. We agree with Bargos that the trial court erred. We agree with the State that the error was harmless.

### B. Article 42A.252 determines when the trial court must order a PSI.

Article 42A.252 of the Texas Code of Criminal Procedure provides,

(a) Except as provided by Subsections (b) and (c), before the imposition of the sentence by a judge, the judge shall direct a supervision officer to prepare a presentence report for the judge.

(b) The judge is not required to direct a supervision officer to prepare a presentence report in a misdemeanor case if:

. . . .

(c) The judge is not required to direct a supervision officer to prepare a presentence report in a felony case if:

(1) punishment is to be assessed by a jury;

(2) the defendant is convicted of or enters a plea of guilty or nolo contendere to capital murder;

(3) the only available punishment is imprisonment; or

11

> (4) the judge is informed that a plea bargain agreement exists, under which the defendant agrees to a punishment of imprisonment, and the judge intends to follow that agreement.

Tex. Code Crim. Proc. Ann. art. 42A.252.

## C. We review the trial court's ruling de novo.

From the above four options, the only potentially applicable subsection excusing the trial court from ordering a PSI was the third one—if imprisonment was the only available punishment. *Id.* art. 42A.252(c)(3). Determining whether imprisonment was the only available punishment is a question of statutory construction, which is a question of law that we review de novo. *See Jiminez v. State*, 446 S.W.3d 544, 550 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

## D. The State argues that the trial court did not err.

The State points to the trial court's comments at the close of the punishment trial to support its assertion that the trial court did not err. At the punishment trial, after both the State and Bargos had closed and after both had presented their closing arguments, the trial court stated,

> THE COURT: All right. Thank you.
>
> All right. Mr. Bargos, please stand.
>
> Mr. Bargos, it is clear to the Court that you do have an issue with a number of your loved ones in your life and that you have a continuing pattern of family violence. And the Court does agree that probation . . . is not appropriate in this case.
>
> And furthermore, after considering the circumstances of the prior convictions, in this particular instance, the Court has received and

12

> accepted the verdict of guilty in this case[ and] hereby sentences you to 12 years in the Institutional Division of the Texas Department of Criminal Justice.

The State maintains that "[t]he trial court was clear in its sentencing decision that probation was not appropriate and thus not an option. . . . Accordingly, because imprisonment (from [two] to [twenty] years) was the only available punishment, the trial court did not err/abuse its discretion in denying [Bargos]'s request for a PSI." In short, the State argues that even if imprisonment was not the only punishment available de jure, imprisonment was the only punishment available de facto. We are not persuaded.

By definition, the report is presentence, not post-sentence. The Texas Court of Criminal Appeals has previously refuted the argument that a defendant's PSI eligibility is retrofitted to the punishment that the trial court later assesses: "The [State's] contention that the only available punishment for appellant was imprisonment [because the trial court had assessed the defendant's punishment at sixty years' imprisonment] assumes that the availability of community supervision is determined *after* sentence has been assessed. But that assumption runs contrary to the language of the statute." *Whitelaw v. State*, 29 S.W.3d 129, 130, 132 n.13 (Tex. Crim. App. 2000), *superseded by statute as stated in Jimenez*, 446 S.W.3d at 550 n.2. Assuming that the trial court had heard enough during the trial on guilt to know that it would not consider community supervision, the trial court had not yet conducted the punishment trial, much less assessed Bargos's punishment, when it denied his request for a PSI.

13

Whether Bargos was eligible for community supervision before the punishment trial is the question. *See id.*

**E. As a matter of law, imprisonment was not the only available punishment.**

The jury found Bargos guilty of a third-degree felony. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(2)(A). A third-degree felony is punishable by imprisonment for any term of not more than ten years or less than two years and a fine not to exceed $10,000. *See id.* § 12.34.

If the trial court found the repeat-offender notice true, Bargos's punishment range would increase to that of a second-degree felony. *See id.* § 12.42(a). A second-degree felony is punishable by imprisonment for any term of not more than twenty years or less than two years and a fine not to exceed $10,000. *See id.* § 12.33.

A defendant who receives a punishment of a term of imprisonment not exceeding ten years is eligible for community supervision. *See* Tex. Code Crim. Proc. Ann. art. 42A.053(c).

For some offenses, the trial court is statutorily prohibited from awarding community supervision, but Bargos's offense was not one of them. *See id.* art. 42A.054.

For Bargos's third-degree felony, the trial court could not assess a punishment of imprisonment exceeding ten years. *See* Tex. Penal Code Ann. § 12.34. Regardless of the sentence assessed for a third-degree felony, Bargos would be eligible for community supervision. *See* Tex. Code Crim. Proc. Ann. art. 42A.053(c).

Even if we factor in the repeat-offender notice, the punishment range did not preclude community-supervision eligibility. A sentence not exceeding ten years was within the available range. *See* Tex. Penal Code Ann. § 12.33.

*Whitelaw* also involved an offense for which the punishment range spanned both community-supervision-eligible and community-supervision-ineligible sentences. In *Whitelaw*, the defendant was convicted of what was then a first-degree felony (with a punishment range of imprisonment for life or for any term of not more than ninety-nine years or less than five years and a fine not to exceed $10,000), but the Texas Court of Criminal Appeals held that the trial court erred by not ordering a PSI because imprisonment was not the only punishment available. *Whitelaw*, 29 S.W.3d at 130, 134; *see* Tex. Penal Code Ann. § 12.32; *Whitelaw v. State*, No. 14-98-00867-CR, 1999 WL 1123016, at *1 (Tex. App.—Houston [14th Dist.] 1999) (not designated for publication), *rev'd*, 29 S.W.3d at 134; *see also* Act of May 31, 2015, 84th Leg., R.S., ch. 1251, § 10, sec. 31.03(e), 2015 Tex. Sess. Law Serv. 4208, 4212 (current version at Tex. Penal Code § 31.03(e)).

Here, imprisonment was also not the only punishment available

**F. Section 3(d) of Article 37.07 does not change the result.**

While Article 42A.252 appears to require the trial court to order a PSI, Section 3(d) of Article 37.07 appears to give the trial court discretion. Article 37.07, Section 3(d) provides,

15

> When the judge assesses the punishment, the judge may order a presentence report as contemplated in Subchapter F, Chapter 42A, and after considering the report, and after the hearing of the evidence hereinabove provided for, the judge shall forthwith announce the judge's decision in open court as to the punishment to be assessed.

Tex. Code Crim. Proc. Ann. art. 37.07, § 3(d).

At trial, both the State and the trial court asserted that Bargos was not entitled to a PSI. Although neither the prosecutor nor the trial court referred to this statute at trial, and although the State does not refer to this statute in its brief, the statute nevertheless appears to support the State's position. *See Stancliff v. State*, 852 S.W.2d 630, 631 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd), *disapproved of by Whitelaw*, 29 S.W.3d at 130, 134. Although we uphold a trial court's ruling if it is correct under any applicable legal theory supported by the record, *see Austin v. State*, 222 S.W.3d 801, 811–12 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd), the Texas Court of Criminal Appeals has already rejected this particular legal theory. *See Whitelaw*, 29 S.W.3d at 130–34.

Subchapter F of Chapter 42A (referred to specifically in Section 3(d) of Article 37.07) encompasses Article 42A.252—the article applicable in Bargos's case. *See* Tex. Code Crim. Proc. Ann. arts. 42A.251–.259 (Subchapter F of Chapter 42A). As noted earlier, Section 3(d) of Article 37.07 refers to a PSI in discretionary terms whereas Sections (a) and (c) of Article 42A.252 refer to a PSI in mandatory terms.

The apparent conflict between Section 3(d) of Article 37.07 and what were then Subsections 9(a) and 9(g) of Article 42.12 (and what are now Sections (a) and (c)

of Article 42A.252) surfaced and was resolved by the Texas Court of Criminal Appeals in *Whitelaw.* The court held that Subsections 9(a) and 9(g) of Article 42.12 controlled over Section 3(d) of Article 37.07. *Whitelaw,* 29 S.W.3d at 130–34. In doing so, the court addressed and disapproved of intermediate appellate court opinions (including *Stancliff,* cited earlier) that held the contrary. *See id.* at 130, 134.

Years later, effective January 1, 2017, the legislature re-codified—without substantive changes—Article 42.12 of the Code of Criminal Procedure as Chapter 42A of the Code of Criminal Procedure. *See* Act of May 26, 2015, 84th Leg., R.S., ch. 770, §§ 1.01, 3.01, 4.01, 4.02, ch. 42A, arts. 42A.001–.757, 2015 Tex. Sess. Law Serv. 2320, 2333, 2394 (current version at Tex. Code Crim. Proc. ch. 42A, arts. 42A.001–.757). Unlike the former statutory provisions at issue in *Whitelaw* (decided in 2000), the current statute does not require the defendant to request a PSI; the trial court must order a PSI unless an exception applies. *Compare* Tex. Code Crim. Proc. Ann. art. 42A.252, *with Whitelaw,* 29 S.W.3d at 131 (quoting former Article 42.12, § 9(g)). This change occurred effective September 1, 2005, when the legislature deleted "[u]nless requested by the defendant" from Subsection 9(g). Act of May 20, 2005, 79th Leg., R.S., ch. 500, §§ 1, 2, 2005 Tex. Gen. Laws 1374, 1374 (current version at Tex. Code Crim. Proc. art. 42A.252(c)); *see Jiminez,* 446 S.W.3d at 550 n.2.

Relying on *Whitelaw,* we hold that Sections (a) and (c) of Article 42A.252 take precedence over Section 3(d) of Article 37.07. *See Whitelaw,* 29 S.W.3d at 130–34. The trial court thus erred. *See* Tex. Code Crim. Proc. Ann. art. 42A.252(a), (c).

17

**G. The error was harmless.**

"Error in failing to order the preparation of a PSI report is subject to a review for harm." *Buchanan v. State*, 68 S.W.3d 136, 139 (Tex. App.—Texarkana 2001, no pet.); *see Davis v. State*, No. 01-15-00012-CR, 2016 WL 3901024, at *3 (Tex. App.— Houston [1st Dist.] July 14, 2016, no pet.) (mem. op., not designated for publication). Failure to order a PSI is statutory error, so we apply the harm analysis for nonconstitutional error. *Davis*, 2016 WL 3901024, at *3. "Nonconstitutional error is harmless if it did not affect the defendant's substantial rights." *Buchanan*, 68 S.W.3d at 140; *see* Tex. R. App. P. 44.2(b); *Davis*, 2016 WL 3901024, at *3.

Bargos argued to the trial court that a PSI would provide mitigating information: "[A]s the Court knows, the Defendant has a fair amount of history. The Court has heard . . . glimpses of his criminal history, but I believe that a PSI would give the Court some perspective on social, medical[,] and family history."

Even without the PSI, during the trial's guilt phase, Bargos presented some evidence that doubled as mitigating evidence. For example, Bargos testified that after his 2016 conviction, he had gone to anger-management classes, had received drug and alcohol treatment, had attended a batterers-intervention program, and had consulted with MHMR (mental health and mental retardation) for "something about mental illnesses." Bargos also asserted that he had not consumed any alcohol or used any drugs in over two years.

18

Bargos also had a punishment trial. Conducting a full punishment hearing does not exempt the trial court from ordering a PSI, but it "may well impact whether the error was harmless." *See Whitelaw*, 29 S.W.3d at 132. At his punishment trial, Bargos rested without calling any witnesses. Bargos made no attempt to leverage his social, medical, or family history into the punishment equation. Instead, during final arguments, defense counsel referred to Bargos's guilt-phase testimony about having attended batterers-intervention and anger-management programs.

Furthermore, one of the purposes of a PSI is to determine whether community supervision is appropriate as an initial matter and, if so, what terms and conditions of community supervision are appropriate. *See Wright v. State*, 873 S.W.2d 77, 84 (Tex. App.—Dallas 1994, pet. ref'd). The required contents of a PSI include a proposed supervision plan if the court suspends the imposition of the sentence. *See* Tex. Code Crim. Proc. Ann. art. 42A.253(a)(4). During final arguments, defense counsel asked the trial court to consider placing Bargos on community supervision, which potentially accentuated the need for a PSI. Yet in Bargos's case, the trial's guilt phase copiously informed the trial court about the propriety of awarding community supervision. When testifying during the trial on guilt, Bargos acknowledged that he had other convictions—

- two assaults with bodily injury on a family member, one in 2008 and the other in 2016;

- one assault on a family member with a previous conviction in 2012;

- violating a protective order in 2015; and

- possessing a controlled substance, a felony.

For the assault on a family member with a previous conviction in 2012, Bargos said that he was sentenced to thirty months in prison. In short, this was not Bargos's first rodeo.

Regarding the 2016 assault on a family member with a previous conviction, the officer who responded to it testified that

- she had reason to believe that a baseball bat was involved;

- the complainant smelled terribly of gasoline; and

- the complainant was distressed about the gasoline smell.

Thus, from the trial on guilt alone, the trial court had a great deal of evidence from which the court could have reasonably concluded that Bargos was a very poor candidate for community supervision and that preparing a supervision plan would have therefore been a waste of time, energy, and resources.

Finally, even if the trial court had ordered the preparation of a PSI, the trial court has discretion on how much weight to give it. *See Wright*, 873 S.W.2d at 84. That discretion includes giving it no weight at all. *See id.*

Based on the above, we hold that the error did not affect Bargos's substantial rights. *See* Tex. R. App. P. 44.2(b). Although we agree with Bargos that the trial court

erred by not ordering the preparation of a PSI, we hold that the error was harmless and overrule his second point.

## III. Conclusion

Having overruled both of Bargos's points, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  February 4, 2021